431 A.2d 889

Rosanne P. EVERSON

v.

Robert W. EVERSON and Walter A. Everson, Appellants.

Supreme Court of Pennsylvania.

Argued Oct. 21, 1980.

Decided July 2, 1981.

Thomas F. Traud, Jr., Allentown, for Robert W. Everson.

Wallace H. Webster, Schnecksville, for Walter A. Everson.

Harry A. Dower, Allentown, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

O'BRIEN, Chief Justice.

On March 31, 1977, the Lehigh County Court of Common Pleas entered judgment in the amount of $596,628.02 plus interest and costs in favor of appellee, Rosanne P. Everson, and against her former husband, appellant, Robert W. Ever-

son, upon receipt of an exemplified copy of a judgment in the same amount from the Superior Court of Maricopa County, Arizona, dated January 25, 1977. The Lehigh County court acted pursuant to authority contained in the Uniform Enforcement of Foreign Judgments Act,[1] which provides that a foreign judgment properly filed shall have the same status as a judgment of a court of common pleas of this Commonwealth and may be enforced or satisfied in the same manner.

On April 1, 1977, a writ of attachment execution issued on appellant's interest in trust property located in Lehigh County. Interrogatories were served upon various garnishees, principally Robert Everson's father, appellant, Walter A. Everson, as trustee of a testamentary trust created by appellant's mother primarily for the benefit of her two sons and consisting of stock in Everson Electric Company. Appellant requested a stay of execution based on the fact that he had filed an appeal from the Arizona judgment. The requested stay was denied inasmuch as he had failed to post the necessary bond to stay proceedings in Arizona.[2] Appellant then filed a motion to strike the Lehigh County judgment which the court denied on November 29, 1977. On the same date the court entered judgment on the pleadings against Walter Everson as garnishee "in the sum of $596,-628.02, plus interest from March 31, 1977, to the extent that

1. The Uniform Enforcement of Foreign Judgments Act was adopted in Pennsylvania by the Act of December 22, 1965, P.L. 1157, 12 P.S. § 921 *et seq.*, repealed by the Act of April 28, 1978, P.L. 202, No. 53, § 2(a) [1390], effective June 27, 1978, and replaced by 42 Pa.C.S.A. § 4306.

2. 42 Pa.C.S.A. § 4306(d) provides that a court of common pleas shall stay the enforcement of a foreign judgment under the following circumstances:

"(d) *Stay.*—

"(1) If the judgment debtor shows the court of common pleas that an appeal from the foreign judgment is pending or will be taken, or that a stay of execution has been granted, the court shall stay enforcement of the foreign judgment until the appeal is concluded, the time for appeal expires, or the stay of execution expires or is vacated, upon proof that the judgment debtor has furnished the security for the satisfaction of the judgment required by the State in which it was rendered."

such sum may become payable out of the share or interest of Robert W. Everson in the Estate of Louise Everson, deceased, as such interest or share shall in due course be determined by the Orphans' Court Division of the Court of Common Pleas of Lehigh County." The orders of the Lehigh County Court of Common Pleas were affirmed by the Superior Court and we granted the appellant's petition for allowance of appeal.

Rosanne P. Everson and Robert W. Everson, residents of Arizona, were married on August 9, 1962. They separated nine years later and were divorced on October 10, 1973, pursuant to a decree of the Maricopa County Superior Court which ordered dissolution of the marriage and distribution of the couple's community property.[3] That decree provided, *inter alia*, as follows:

"That the Court finds that the Plaintiff [Rosanne P. Everson] has sustained the burden of proving that all assets as shown on the Statement of Assets dated January 11, 1973, as of June 30, 1972, prepared by Arthur Anderson & Co., which was admitted in evidence as Exhibit No. 39, (*with the exception of the trust of Everson Electric Co. stock*) are community property of the parties and that the Defendant [Robert W. Everson] has wholly failed to rebut said evidence or to overcome the presumption of the same being community property." (emphasis added)

Based on the above finding, the court awarded a fifty percent (50%) interest in said assets to Rosanne Everson and confirmed that interest as her sole and separate property. As to Robert Everson, the decree provided:

"5. That the Defendant, Robert W. Everson, is awarded and confirmed as his sole and separate property the remaining fifty percent (50%) interest in said assets and *6250 shares of Everson Electric Company stock* held in

3. Arizona, one of eight "community property" states in the United States, conducts one proceeding to dispose of all questions arising in connection with the dissolution of a marriage.

testamentary trust for the benefit of Robert W. Everson being all of said interest." (emphasis added.)[4]

Further, the court assigned a money value to each item of community property and directed Robert W. Everson to transfer to Rosanne P. Everson fifty percent (50%) of the value thereof.

Both parties appealed to the Arizona Court of Appeals, an intermediate appellate court, and a supersedeas was entered which suspended execution of the judgment pending the appeal. Robert W. Everson appealed from the parts of the decree which ruled that certain assets were community property and must be divided equally with his former wife and that he must pay all community debts. Rosanne P. Everson appealed that parts of the decree which denied her an award of trial attorney's fees and costs as well as accountant's fees and costs, temporary support and maintenance pending the appeal, and the appointment of a receiver. Significantly, she did not appeal the determination that his interest in the stock of Everson Electric Company was his sole and separate property.

4. The court concluded that Robert W. Everson's interest in the Everson Electric Company stock was created prior to the marriage and, therefore, his wife never attained any interest in it. The interest was created by the terms of the will of his mother who died on June 2, 1965. Her will, duly probated in Lehigh County, Pennsylvania, provided in pertinent part:

"THIRD: I give and bequeath fifty (50%) per cent of the Common Stock standing in my name on the books of record of Everson Electric Corp. to WALTER A. EVERSON, TRUSTEE, for the following uses and purposes:

"a. The income and/or dividends of said stock shall be accumulated and held by my trustee until either,

"(1) the sale of said stock by the trustee, or

"(2) the death of my husband, WALTER A. EVERSON.

"b. Upon the sale of said stock, and any accumulated income and/or dividends, or the death of my husband, WALTER A. EVERSON, whichever event shall first occur, this trust shall terminate and I direct either my trustee, or alternate executor, to distribute the proceeds, or stock and accumulated income and/or dividends, in kind, in equal shares, to my sons, ROBERT and DAVID their heirs and assigns; however, in the event either of both, should die before either event occurs then to their issue, per stirpes, and in the event of failure of issue then such share to the surviving son or if no survivor then both sons' share to the then living issue."

On July 5, 1975, the Arizona Court of Appeals affirmed the decree in part, reversed it in part, and remanded to the Maricopa County Superior Court for redetermination of the community and separate character of certain of the assets. On January 25, 1977, following remand proceedings, the trial court found that Robert W. Everson had so commingled his separate and community assets that the court was unable to segregate or trace any separate funds or assets. It entered its second judgment against him in the amount of $596.628.02, plus interest from January 25, 1977, and as part of its decree ordered:

"15. That [Rosanne P. Everson] is awarded a lien against all of [Robert W. Everson's] property and assets, both community and separate, until the judgment of the Court is satisfied."

He then appealed from this second judgment and again requested a stay of execution which was denied for failure to file a proper bond. On March 31, 1977, the judgment was transferred to Lehigh County, Pennsylvania, the situs of the aforesaid trust, pursuant to the Uniform Enforcement of Foreign Judgments Act, and, thereafter, the Pennsylvania proceedings ensued.

Meanwhile, the appeal from the January 25, 1977, judgment was argued before the Arizona Court of Appeals on January 16, 1979. On March 4, 1980, by memorandum opinion, that court affirmed in part and reversed in part. On September 4, 1980, a petition for reconsideration was denied by supplemental memorandum which modified the court's March 4, 1980 opinion. Rosanne Everson filed a petition for review which was denied by the Arizona Supreme Court on September 30, 1980. On January 14, 1981, the Arizona Court of Appeals entered a mandate to the Maricopa County Superior Court to conduct such proceedings as required to comply with the March 4, 1980 and September 4, 1980 opinions of the court of appeals.

On the second appeal, the basic question was, again, the propriety of the trial court's classification and division of the assets of the parties. In addition, the court of appeals was

required to rule on the validity of certain post-judgment orders entered by the trial court. The court of appeals ruled there was no basis for the trial court's conclusion on remand that all of the couple's assets were community property. Thus, it reversed Rosanne Everson's award of $367,961 for her share of Visioneering stock and found that all the Visioneering stock was the separate property of her former husband. However, it affirmed the valuation of his pension and distribution to Rosanne Everson of one-half that amount. Further, it affirmed an equal division of Robert Everson's silver accounts and cash, as well as the award to his former wife of $10,000 for attorney's fees and costs in defending the appeal.

At the outset we must resolve an issue which arose after this case was considered by the Lehigh County Court of Common Pleas and the Superior Court of Pennsylvania. During the proceedings in Pennsylvania the Maricopa County Superior Court judgment dated January 25, 1977, was on appeal to the Arizona Court of Appeals. As noted earlier, the Lehigh County court denied Robert Everson's request to stay enforcement of the Arizona judgment by Pennsylvania since he had failed to post bond, with surety, in the amount of $500,000, which was required to stay proceedings in Arizona.[5] After allocatur was granted and oral argument advanced in this Court, the Arizona Court of Appeals affirmed in part and reversed in part the January 25, 1977 order which has been contested all along in Pennsylvania. Moreover, the proceedings in this matter are not concluded in Arizona inasmuch as on January 14, 1981, the Arizona Court of Appeals remanded the record to the Maricopa County court for proceedings consistent with its decision.

Appellant maintains that the January 25, 1977 judgment is no longer valid and that Pennsylvania cannot enforce an invalid foreign judgment. Moreover, he argues that this Court should not be required to take into consideration the intervening Arizona appellate court decisions where neither the Lehigh County Court of Common Pleas nor the Superior

5. *See* n. 2, *supra* at page 891.

Court of Pennsylvania had an opportunity to review them. Appellee maintains that while the intervening decisions may require certain modifications in the amount of the money judgment which can be made by the Lehigh County court, they do not affect the underlying validity of the January 25, 1977 judgment. Furthermore, she argues that the substantive issues raised in this appeal can and should be decided at this time without regard to modification of the judgment.

In resolving this issue we are guided by certain principles pertaining to the enforceability of judgments generally as well as by pertinent provisions of the Uniform Enforcement of Foreign Judgments Act which specifically apply to this case.

■■■ Ordinarily a judgment for the payment of money will not be enforced in another state unless it is a final judgment for a specific amount of money. However, a judgment may be final under the local law of the state of rendition as to some matters and yet not final as to other matters. Thus, it may have been finally determined that the judgment creditor should succeed in his claim but decision may not have been reached as to the amount of recovery. In such a case the judgment debtor will be precluded from contesting his liability to the plaintiff, but judgment will not be enforced in a second state until the amount of judgment has been finally determined. *See* 30 Am.Jur.2d *Executions* §§ 5, 9 (1967); Restatement (Second) of Conflict of Laws §§ 107–108 (1971).

■■■ Further, a writ of execution may not be issued on a judgment which has been reversed or vacated. However, the mere fact that a party has made a motion in the trial court to vacate the judgment and to grant a new trial or to modify the judgment or enter a new judgment does not deprive the judgment of its conclusive effect in another action between the parties. Where an execution is issued under a judgment which is subsequently amended or modified, regularity may be imparted to the execution by an amendment of the judgment on which it is based and by its

entry *nunc pro tunc.* *See* Restatement of Judgments § 41 (1942); 30 Am.Jur.2d *Executions* §§ 12–13 (1967).

Whether the taking of an appeal deprives a judgment of its conclusive effect in another action depends on whether such proceedings operate to vacate the judgment under the law of the state in which the judgment was entered. Restatement of Judgments § 41 (1942). If, by the local law of the state of rendition, the appeal does not vacate the judgment action will lie on the judgment in another state. Usually, however, the courts of the state in which enforcement of the judgment is sought will either stay their judgment, or stay execution thereof, pending the determination of the appeal. Restatement (Second) of Conflict of Laws §§ 107, 112 (1971).

The judgment sought to be enforced in this case was final as to Robert W. Everson's liability but the amount of Rosanne Everson's entitlement had not been finally determined. Under Arizona law the taking of an appeal does not operate to vacate the judgment, nor are proceedings stayed pending appeal unless the requisite bond is posted. Thus, action on the January 25, 1977 Arizona judgment in Pennsylvania was not precluded by the pending appeal in Arizona.

More particularly, enforcement of the judgment in Pennsylvania was authorized by the Uniform Enforcement of Foreign Judgments Act, 42 Pa.C.S.A. § 4306, which provides that at any time after the filing of a foreign judgment, a levy may be made on any property of the judgment debtor subject to execution regardless of whether final judgment has been obtained. The judgment debtor may preclude such execution upon a showing that an appeal will be taken and that he has furnished adequate security for satisfaction of the judgment. Such a showing was not made in this case.

While enforcement of the Arizona judgment was technically permitted by the Uniform Enforcement of Foreign Judgments Act, general principles of law relating to the enforcement of judgments suggest that execution on the

January 25, 1977 judgment be stayed on equitable grounds due to the proceedings in Arizona subsequent to appellee's transfer of the judgment to Pennsylvania. The intervening decisions of the Arizona Court of Appeals may result in the award to appellee of an amount of money substantially different from the amount awarded by the January 25, 1977 judgment. Therefore, on remand we direct the Lehigh County Court of Common Pleas to enter a stay of execution until such time as the Maricopa County Superior Court has complied with the mandate of the Arizona Court of Appeals and entered a new judgment. In light of our resolution of the remaining issues in appellee's favor, we direct further that upon transfer and substitution of such new judgment to Lehigh County, the stay will be vacated and appellee may proceed to execute on appellant's Lehigh County property.

Three substantive issues have been presented for our review. First, appellants contend that the Arizona judgment is not entitled to "full faith and credit" because it rests upon Arizona's "community property" law which is violative of Pennsylvania's public policy. *See Willcox v. Pennsylvania Mutual Life Insurance Company*, 357 Pa. 581, 55 A.2d 521 (1947) (declaring unconstitutional the Community Property Law of 1947). Moreover, appellants assert that Pennsylvania is not obligated to recognize the judgment since the Arizona court had no jurisdiction over the Pennsylvania trust or its trustee.

It is clear that the 1977 Arizona judgment would not have been entitled to full faith and credit enforcement by Pennsylvania if it had purported to adjudicate appellant's interest in the Pennsylvania testamentary trust. It could not have done so since at no time was the Pennsylvania trust or its trustee subject to the jurisdiction of the Arizona court. *See Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Whitmer v. Whitmer*, 123 P.L.J. 139 (1975).

However, the 1977 Arizona judgment did not purport to divide the Pennsylvania trust as community property or

to dispose of assets which were not subject to the Arizona court's jurisdiction. The judgment merely awarded to appellee a sum of money based on the value of the couple's community assets. Thereafter, appellee transferred the judgment to Pennsylvania and sought to execute against appellant's assets located in Pennsylvania in order to satisfy the money judgment.[6] Thus, it was entitled to Pennsylvania's full faith and credit recognition and to enforcement under the Uniform Enforcement of Foreign Judgments Act, provided there was jurisdiction by the court which originally awarded the judgment, see *Stambaugh v. Stambaugh*, 458 Pa. 147, 329 A.2d 483 (1974), and the defendant had an opportunity to appear and defend, see *Morris Lapidus Associates v. Airportels, Inc.*, 240 Pa.Super. 80, 361 A.2d 660 (1976). Significantly, appellant does not assert that the court lacked jurisdiction over the parties to the action, who were bona fide residents of Arizona, or over the marital property located in Arizona. Neither does he claim he was denied due process in the Arizona court where he was represented by counsel, had notice of the proceedings, an opportunity to be heard, and the right to appeal his case.

■■■■ The fact that the Arizona court arrived at the amount of the money judgment by equally dividing the value of the couple's community property located within its jurisdiction does not affect the validity of the judgment in Pennsylvania, a state which has rejected the policy of community property. *Willcox v. Pennsylvania Mutual Life Insurance Company, supra.* A state is required to give full faith and credit to a money judgment rendered in a civil suit by a sister state even where the judgment violates the policy or law of the forum where enforcement is sought. 50 C.J.S. Judgments § 889(d). The validity and effect of a judgment for the payment of money is determined by the law of the state where the judgment was rendered and, if valid and

6. In disposing of certain issues in the second appeal, the Arizona Court of Appeals stated explicitly that the January 25, 1977 judgment did not involve the "division of certain specific property." Instead, it stated, the judgment was "solely for a sum of money." Memorandum Opinion, March 4, 1980.

362

enforceable there, is equally so in all other states. 50 C.J.S. Judgments § 889(b).

■■ Finally, we note that appellee complied with the technical filing requirements of the Uniform Enforcement of Foreign Judgments Act. Since appellants have raised no defenses which destroy the full faith and credit obligation owed to a foreign judgment—*viz.*, the absence of jurisdiction or the lack of due process—the judgment is entitled to enforcement by Pennsylvania even though appellee's claim to half of the couple's community property assets could not have been brought in Pennsylvania. *Morris Lapidus Associates v. Airportels, Inc., supra.* See also *Magnolia Petroleum Co. v. Hunt*, 320 U.S. 430, 64 S.Ct. 208, 88 L.Ed. 149 (1943).

Second, appellants argue that the 1973 Arizona judgment precludes execution against appellant's trust property. The original Arizona decree entered in 1973 specifically ruled that appellant's interest in the testamentary trust was created prior to his marriage, and therefore, it remained his sole and separate property. Appellants argue since appellee did not contest that determination before the Arizona Court of Appeals it was res judicata and the 1977 judgment entered on remand, which ordered an equal division of specific community assets, may not be satisfied by levying against appellant's sole and separate Pennsylvania property. In effect, appellants argue that appellee may not do indirectly what she could not do directly.

Once again we note that the judgment entered in Lehigh County pursuant to the Uniform Enforcement of Foreign Judgments Act does not purport to stand for the proposition that the trust is community property, nor is its validity dependent in any way upon whether the trust is viewed as community or sole and separate property. The judgment was transferred to Pennsylvania and execution levied thereon for the purpose of satisfying a judgment for the payment of money and the 1973 judgment is irrelevant to this case. In rejecting appellants' claim, we note with approval the trial court's reasoning.

"We also find without merit the argument advanced by defendant that by giving the Arizona judgment full faith and credit we will permit plaintiff to execute upon property located in Pennsylvania which is owned by defendant alone and which is not subject to the community property law of Arizona. The judgment is for the payment of money, and the only way it can possibly be enforced is by execution against defendant's property. If the law were as defendant contends, there would be no possible way in which plaintiff could enforce the judgment in a state which did not have a community property law. This . . . is not the law. Indeed, we find nothing to recommend such a view."

Finally, appellants raise two related issues, both of which became moot after allocatur was granted in this case. First, they contend that judgment on the pleadings was improperly entered against garnishee-appellant, Walter A. Everson, since a genuine issue of material fact remained to be determined. Next, they maintain that appellant's interest in the trust is contingent and, therefore, not subject to attachment execution since the language of the trust instrument permitted alternative dispositions by the trustee with the possibility of a divestiture. Thus, they argue, the unresolved issue which should have precluded judgment on the pleadings was whether appellant's interest in the trust was, in fact, contingent or vested.

We are not required to decide these issues since the garnishee-trustee died on July 19, 1979. Clearly, at that time appellant's interest in his mother's estate vested inasmuch as the instrument provided for termination of the trust and distribution of the res in equal shares to her two sons upon the death of the trustee. Thus, appellee is entitled to levy execution on appellant's vested remainder interest in the trust following a determination of the amount of that interest by the Orphans' Court and transfer of the new judgment by the Maricopa County Superior Court to Lehigh County.

Order of the Superior Court affirmed as modified.