487 A.2d 1372

**Stephen S. NOETZEL and Marilyn B. Noetzel, his wife, Appellees,**

v.

**GLASGOW, INC., Appellant.**

Superior Court of Pennsylvania.

Argued March 27, 1984.

Filed Jan. 30, 1985.

Reargument Denied March 7, 1985.

460

Edward W. Mullinix, Philadelphia, for appellant.

John M. Sheridan, Norristown, for appellee.

Before BROSKY, WIEAND and McEWEN, JJ.

WIEAND, Judge:

This is an appeal from an order denying a petition to strike/open a judgment for $300,000 which was recovered in West Virginia and transferred to Montgomery County, Pennsylvania, pursuant to the Uniform Enforcement of Foreign Judgments Act.[1] Appellant contends that the West Virginia judgment is not entitled to full faith and credit in Pennsylvania because it was obtained in violation of due process requirements. We disagree and, therefore, affirm the order refusing to strike the judgment. However, we will direct that the judgment be amended to reflect partial satisfaction effected by payments admittedly received in West Virginia.

Stephen and Marilyn Noetzel, husband and wife, brought suit in the Circuit Court of Kanawha County, West Virginia, to recover for personal injuries sustained in an automobile accident on Interstate Route 79 in Kanawha County. Named as defendant was Glasgow, Inc., a Pennsylvania corporation, which had contracted with the West Virginia Department of Highways to perform road work. It was alleged in the Noetzel complaint that Glasgow had negligently erected "Detour" barriers, without proper warning signs, thus causing the Noetzel vehicle to crash. Service of the complaint was effected on June 18, 1979 by making service on the Secretary of State of West Virginia who, pursuant to W.Va.Code § 31-1-15, had been designated attorney-in-fact for foreign corporations. The Secretary of State mailed the complaint to Glasgow's West Virginia agent, C.T. Corporation System, in Charleston, West Virginia. It was there received by W.M. Woodroe, who forwarded it to the C.T. Corporation in Philadelphia. Finally, it was transmitted to the offices of Glasgow's general counsel. By inadvertence and mistake thereafter occurring, the complaint was not answered; and, on August 13, 1979, a default judgment was entered without further notice to Glasgow. On March 19, 1980, the action was certified for jury trial to determine damages. Again, no notice was given to Glas-

1. 42 Pa.C.S. § 4306.

gow, and the trial to assess damages proceeded ex parte on June 25, 1980. The verdict awarded damages to Stephen Noetzel in the amount of $100,000 and to Marilyn Noetzel in the amount of $200,000.

On February 27, 1981, the Noetzels issued a writ of execution and garnished moneys payable to Glasgow by the West Virginia Department of Highways. Glasgow then learned of the judgment which had been entered against it for the first time and moved, on March 23, 1981, for relief from the judgment. Its request was denied by the West Virginia court on April 9, 1981. The court held that service had been lawful, that Glasgow had been entitled to no further notice after it had failed to enter an appearance, and that Glasgow had failed to prove fraud in obtaining the judgment. Moreover, the Court held, the averments of Glasgow's motion that default had occurred as a result of inadvertence, mistake, surprise or fraud "were not made within eight (8) months of the entry of the judgment order herein and therefore [pursuant to W.Va.R.Civ.P. 60(b)] cannot be considered as grounds to set aside the ... order." No appeal was taken from that order. However, on May 22, 1981, Glasgow filed a petition for writ of prohibition in the Supreme Court of Appeals of West Virginia seeking to prohibit further proceedings on the judgment. Relief was denied on June 2, 1981. An attempt to obtain relief in the United States District Court for the Southern District of West Virginia was also unsuccessful. See: *Glasgow, Inc. v. Noetzel,* 556 F.Supp. 595 (S.D.W.Va.1983).

As a result of attachment execution issued against the Department of Highways in West Virginia, the Noetzels were able to collect $218,811.54 on account of their judgment. Then, on December 22, 1981, they filed in the Court of Common Pleas of Montgomery County, Pennsylvania, a praecipe for judgment "in the amount of [$300,000] in favor of [p]laintiffs, Stephen S. Noetzel and Marilyn B. Noetzel pursuant to the Uniform Enforcement of Foreign Judgments Act." The Court of Common Pleas denied a motion to open/strike the judgment thus recorded in Montgomery

County, and Glasgow appealed. It contends that "the Noetzels manipulated the procedural rules [in West Virginia] in a manner that deprived Glasgow of its due process rights to notice and an opportunity to be heard" and that "Rule 60(b) of the West Virginia Rules of Civil Procedure is unconstitutional because it provides an absolute bar to relief from judgments entered without notice or hearing by plaintiffs who deliberately conceal the judgments until the limited time for seeking relief ha[s] expired." Because its due process rights were violated, Glasgow contends, the judgment against it is not entitled to full faith and credit and therefore is not entitled to be accepted or enforced in Pennsylvania pursuant to the Uniform Enforcement of Foreign Judgments Act.

The Uniform Enforcement of Foreign Judgments Act provides:

> (b) Filing and status of foreign judgments.—A copy of any foreign judgment including the docket entries incidental thereto authenticated in accordance with act of Congress or this title may be filed in the office of the clerk of any court of common pleas of this Commonwealth. The clerk shall treat the foreign judgment in the same manner as a judgment of any court of common pleas of this Commonwealth. A judgment so filed shall be a lien as of the date of filing and shall have the same effect and be subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of any court of common pleas of this Commonwealth and may be enforced or satisfied in like manner.

42 Pa.C.S. § 4306(b). A "foreign judgment" is defined in the Act as "any judgment, decree, or order of a court of the United States or of any other court requiring the payment of money which is entitled to full faith and credit in this Commonwealth." 42 Pa.C.S. § 4306(f).

A foreign judgment is entitled to full faith and credit in Pennsylvania so long as "there was jurisdiction by the court which originally awarded the judgment, *see Stambaugh v. Stambaugh*, 458 Pa. 147, 329 A.2d 483 (1974), and

the defendant had an opportunity to appear and defend, *see Morris Lapidus Associates v. Airportels, Inc.,* 240 Pa.Super. 80, 361 A.2d 660 (1976)." *Everson v. Everson,* 494 Pa. 348, 361, 431 A.2d 889, 895–896 (1981). The courts in Pennsylvania will refuse to give full faith and credit to a foreign judgment if it was obtained in derogation of a basic, due process right of the defendant. *Hanson v. Denckla,* 357 U.S. 235, 255, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958). However, when "the court of another state has purported to act on the merits of a case, its jurisdiction to do so and the regularity of its proceedings are presumptively valid." *Barnes v. Buck,* 464 Pa. 357, 364, 346 A.2d 778, 782 (1975). The party challenging the validity of the judgment, therefore, bears the burden of showing any irregularity in the proceedings. *Commonwealth, Department of Transportation v. Granito,* 70 Pa.Cmwlth. 123, 127, 452 A.2d 889, 891 (1982).

■■■ The first problem which appellant encounters is that a prior request for relief from the default judgment was made to the court in West Virginia and was denied. The West Virginia court, which clearly had jurisdiction to determine the integrity of its own judgment, upheld the finality of appellees' judgment against appellant in the face of a petition by appellant which challenged its validity. In denying appellant's request for relief, the court found that the judgment had not been fraudulently obtained and that there was neither factual nor legal basis for relief. This determination of the West Virginia court, from which no appeal was taken, is res judicata with respect to the validity of the judgment. When a court of competent jurisdiction has determined a litigated cause on its merits, the judgment entered and not reversed on appeal is, forever and under all circumstances, final and conclusive as between the parties to the suit and their privies, in respect to every fact which might properly be considered in reaching a judicial determination of the controversy, and in respect to all points of law there adjudged, as those points relate directly to the cause of action in litigation. *Bearoff v. Bearoff Bros., Inc.,* 458

Pa. 494, 498, 327 A.2d 72, 74 (1974); *Stevenson v. Silverman,* 417 Pa. 187, 191, 208 A.2d 786, 787–788, *cert. denied,* 382 U.S. 833, 86 S.Ct. 76, 15 L.Ed.2d 76 (1965). A final, valid, judicial determination on the merits by a court of competent jurisdiction bars any future litigation between the same parties on the same cause of action. *Id.,* 417 Pa. at 190, 208 A.2d at 787; *Goldstein v. Ahrens,* 379 Pa. 330, 108 A.2d 693 (1954). It bars relitigation of issues raised, as well as arguments which might have been raised. *General Accident Fire & Life Assurance Corp. v. Flamini,* 299 Pa.Super. 312, 316, 445 A.2d 770, 772 (1982). This doctrine of res judicata is a part of the "national jurisprudence" by virtue of the full faith and credit clause of the federal constitution. *Riley v. New York Trust Co.,* 315 U.S. 343, 349, 62 S.Ct. 608, 612, 86 L.Ed. 885, 891 (1942). It follows that appellant is precluded from attacking the validity of the West Virginia judgment a second time in the courts of Pennsylvania. Indeed, it was in part because of principles of res judicata that the federal court refused to consider appellant's request for relief in that court. *Glasgow, Inc. v. Noetzel, supra.*

█ Appellant contends that because of the eight month statute of limitations provided in West Virginia Rule 60(b), infra, it was foreclosed from arguing the merits of its claim that the judgment was invalid because of the unconstitutionality of West Virginia's procedural rules. There is no merit in this contention. Rule 60(b)'s eight month limitation period applies only to attacks on the judgment for reasons of mistake, inadvertance, surprise, fraud and things of that nature. A judgment debtor is *not* precluded by the limitation period from attacking a judgment which is void. *W.Va.R.Civ.P.* 60(b)(4). "Embraced within the ambit of Rule 60(b)(4) are those judgments which are void by reason of a lack of due process. Glasgow could thus have raised its constitutional claim in the courts of West Virginia when it sought relief from the default judgment there." *Glasgow, Inc. v. Noetzel, supra* at 599 (citation omitted). Appellant is barred by principles of res judicata from raising this

claim not only in the federal courts but also in the courts of Pennsylvania.

Appellant's challenge to the monetary judgment on due process grounds is also lacking in substantive merit. That the courts of West Virginia had in personam jurisdiction over appellant is clear. Appellant was properly served with a copy of the initial complaint, and notice of appellees' action was received. Although conceding the court's in personam jurisdiction, appellant argues that due process was violated by West Virginia procedure which permitted the entry of a default judgment and a hearing to determine damages without additional notice and an opportunity to be heard. This procedure when coupled with an eight months' limitation on the right to petition to open the default judgment, Glasgow contends, was offensive to due process.

W.Va.R.Civ.P. 5(a) provides, in part, as follows:

No service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4.

W.Va.R.Civ.P. 60(b) provides, in part, as follows:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) *Mistake, inadvertence, surprise, excusable neglect, or unavoidable cause;* (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) *fraud* (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable

*time, and for reasons (1), (2), (3) and (6) not more than eight months after the judgment, order, or proceeding was entered or taken.*

(Emphasis added). Appellees waited until more than seven months had elapsed following the entry of the default judgment. They then asked for a hearing to determine the amount of damages sustained in order to give monetary significance to their judgment. This hearing was held more than eight months after the entry of default judgment and without notice to Glasgow, pursuant to W.Va.R.Civ.P. 5(a). We are not called upon to review the wisdom of procedural rules which permit such a result.[2] We must determine only whether the procedure established by rule in West Virginia violated rudimentary principles of due process. See: *Everson v. Everson*, 264 Pa.Super. 563, 574, 400 A.2d 887, 893 (1979), *aff'd as modified*, 494 Pa. 348, 431 A.2d 889 (1981).

Notice, the most basic requirement of due process, must "be reasonably calculated to inform interested parties of the pending action, and the information necessary to provide an opportunity to present objections. The form of the notice required depends on what is reasonable, considering the interests at stake and the burdens of providing notice." *Pennsylvania Coal Mining Association v. Insurance Department*, 471 Pa. 437, 452–453, 370 A.2d 685, 692–693 (1977). See also: *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314–315, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950); *Stateside Machinery Co. v. Alperin*, 591 F.2d 234, 241 (3d Cir.1979); *Celane v. Commonwealth, Insurance Commissioner*, 51 Pa.Cmwlth. 633, 635, 415 A.2d 130, 132 (1980). As long as a method of service is reasonably certain to give notice to a defendant that an action is pending against him, the fact that such defendant fails to receive actual notice does not invalidate service on due process grounds. *Stateside Machinery Co. v. Alperin, supra* at 241. The substituted service on the West Virginia Secretary of State in this case and his subse-

2. A similar result could not occur in Pennsylvania. See: Pa.R.C.P. 236, 237.1.

quent notification of Glasgow's West Virginia agent was in fact reasonably calculated to inform Glasgow of the action and was adequate to satisfy due process requirements. Moreover, the notice in this case was received in fact by Glasgow's representatives. The failure to act in pursuance thereof was attributable either to inadvertence or carelessness. Due process did not require that Glasgow receive repeated notices thereafter. When Glasgow failed to appear in response to initial service, due process did not require that it again be invited to participate in the proceedings. Appellees were not required to obtain Glasgow's permission to proceed further. Due process did not require notice of appellees' intent to enter a default judgment or of their intent to take procedural steps to reduce their judgment to a monetary amount. When Glasgow failed to evidence interest in defending the action following service of initial process, due process did not require that appellees invite them to join the proceedings thereafter. See: *Federal Deposit Insurance Corp. v. Spartan Mining Co.*, 96 F.R.D. 677 (S.D.W.Va.1983). See also: *Anderson v. Taylorcraft, Inc.*, 197 F.Supp. 872, 873 (W.D.Pa.1961) (in absence of appearance defendant not entitled to notice of nonjury trial).

Similarly, we are unable to perceive constitutional infirmity in Rule 60(b) which, in effect, imposes an eight months' limitation on motions to open default judgments where the default was caused by "mistake, inadvertence, surprise, excusable neglect or unavoidable cause." Subject only to the requirement that the limitation must be reasonable, statutes of limitation pertain to remedies and do not impair fundamental rights. *Gravinese v. Johns Manville Corp.*, 324 Pa.Super. 432, 441, 471 A.2d 1233, 1238 (1984). The West Virginia rule is reasonable.[3] It has a rational and

3. The courts of Pennsylvania have uniformly refused to open default judgments unless a petition to open is filed promptly. See: *Ridgid Fire Sprinkler Service, Inc. v. Chaiken*, 333 Pa.Super. 213, 218, 482 A.2d 249, 252 (1984); *Dodson v. N. John Cunzolo & Associates Architectural Clay Products, Inc.*, 326 Pa.Super. 283, 288–289, 473 A.2d 1093, 1096

valid purpose. It provides for the finality of judgments entered by default after a reasonable time for seeking relief has expired. The establishment of a fixed period of limitation was properly a matter within the discretion of the courts of West Virginia. We will not review possible imperfections in this West Virginia procedure. We determine only whether the imperfections are so egregious as to offend due process. We conclude that they are not. The fact that appellees relied upon the West Virginia rule to establish the finality of their judgment and thereafter established the monetary amount of their judgment and pursued execution thereon did not render the period of limitations unreasonable or invalid. If appellees used the rule for their own purposes, it was appellant's default which made it possible for them to do so.

We conclude, therefore, that the Court of Common Pleas in Montgomery County properly denied appellant's motion to strike the judgment transferred from West Virginia. That judgment was not offensive to due process and was thus entitled to full faith and credit in Pennsylvania. It can properly be enforced by the courts of this Commonwealth pursuant to the Uniform Act.

It is clear, however, that the amount of appellees' judgment is incorrect because of partial satisfaction effected in West Virginia.[4] Appellant's petition to open or strike the judgment averred that the sum of $218,811.54 had been realized by garnishment proceedings in West Virginia, and appellees' answer contained an admission that this was correct.

 "A judgment should only be stricken if the

(1984); *Bottero v. Great Atlantic & Pacific Tea Co.,* 316 Pa.Super. 62, 68–70, 462 A.2d 793, 797–798 (1983).

4. Appellant has argued that the Pennsylvania judgment should be stricken because it combined separate judgments entered in West Virginia in favor of husband and wife. We have rejected this argument. The Pennsylvania judgment is clearly supported by the record in West Virginia, and it is not rendered defective because both judgments were consolidated in a joint proceeding in this state.

record reveals a defect on its face...."[5] The fact that the judgment was entered was not the mistake and thus the entire judgment should not be stricken." *B.C.Y., Inc., Equipment Leasing Associates v. Bukovich,* 257 Pa.Super. 121, 125, 390 A.2d 276, 278 (1978) (footnote added). However, a court has an inherent power to correct the amount of a judgment and may do so on its own motion. *Wilson Laundry Co. v. Joos,* 200 Pa.Super. 595, 601, 189 A.2d 917, 920 (1963). Under the circumstances of this case, we will remand to the trial court to enter an order amending the judgment to reflect the partial satisfaction effected in West Virginia.

Remanded with directions to amend the judgment by reducing it according to the partial satisfaction admittedly effected in West Virginia. The order refusing to strike or open the judgment is otherwise affirmed. Jurisdiction is not retained.

5. Appellees' counsel properly certified that the West Virginia judgment remained "unsatisfied." The failure of the certification to reflect a "partial satisfaction" in the amount collected in West Virginia did not render the Pennsylvania judgment susceptible to a motion to strike. Cf. *Busy Beaver Building Centers, Inc. v. Tueche,* 295 Pa.Super. 504, 442 A.2d 252 (1981).