J-A05020-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TOTAL RESOLUTION, LLC, ASSIGNEE OF THE HONESDALE NATIONAL BANK | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| TOTAL LANDSCAPING, INC., JOHN BOLD AND BARBARA LINDE BOLD | : : : : : : | No. 665 EDA 2016 |
| APPEAL OF: BARBARA J. LINDE BOLD | | |

Appeal from the Order Entered January 22, 2016
In the Court of Common Pleas of Wayne County Civil Division at No(s):
No. 550-Civil-2009

BEFORE:   DUBOW, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY MURRAY, J.:                      **FILED MARCH 13, 2018**

Barbara J. Linde Bold (Appellant) appeals *pro se* from the charging order entered on January 22, 2016 against her partnership interest in BSL Partnership.  Upon review, we affirm.

Preliminarily, we note that Appellant's family has been involved in the construction industry in northeast Pennsylvania for more than 50 years. Appellant and her brother, Scott F. Linde (Scott), maintained ownership interests in a number of corporations and entities, including BSL Partnership and Linde Corporation.  BSL Partnership, owned equally by Appellant and

_____

* Former Justice specially assigned to the Superior Court.

Scott, was formed in 2001 with the primary purpose of acquiring construction equipment that could be rented to Linde Corporation for use on various projects. *See* Appellant's Mot. to Reschedule Hearing, 11/25/15, Exh. A (Luzerne Co. Trial Ct. Op., 11/13/15, at 4).[1] However, beginning in 2006, Appellant's relationship with Scott steadily deteriorated. *Id.* at Exh. A (Luzerne Co. Trial Ct. Op.at 3-4).

Total Landscaping, Inc. (Total Landscaping) is a Pennsylvania corporation owned by Appellant and her ex-husband, John Bold (John). On February 9, 1996, the Honesdale National Bank (the Bank) executed a commercial loan to Total Landscaping in the amount of $500,000. The loan was secured by a promissory note authorizing confession of judgment in the event of default, and Appellant and John executed a personal guaranty for payment.

During the pendency of Appellant's divorce proceedings with John, Total Landscaping defaulted on its loan with the Bank. In the fall of 2007, Scott formed Total Resolutions, LLC (Total) for the stated purpose of mitigating the losses of Total Landscaping and repaying the Bank; additional member-owners subsequently joined Total. N.T., 12/29/15, at 11. On July 7, 2009, the Bank filed a complaint to confess judgment against Total Landscaping,

_____

[1] Appellant's motion to reschedule the hearing includes as an exhibit a trial court opinion from the Luzerne County Court of Common Pleas, issued on November 13, 2015 at Docket 11028 of 2013.

Appellant, and John (collectively Judgment-Debtors) for their failure to make payments as required under the promissory note. Upon application from the Bank, the trial court entered judgment against Judgment-Debtors in the amount of $512,805.97. On May 10, 2010, the Bank sold its judgment interest to Total.

In 2013, Appellant filed suit in Luzerne County against Scott and various directors of Linde Corporation, alleging, *inter alia*, that Scott, as majority shareholder of Linde Corporation, had breached his fiduciary duty to Appellant by engaging in an oppressive, gross abuse of authority and discretion designed to economically destroy her. Appellant's Mot. to Reschedule Hearing, Exh. A (Luzerne Co. Trial Ct. Op., 11/13/15, at 1-2). The record in the instant matter suggests that several of the directors named as defendants in the Luzerne County action are also associated with Total. N.T., 12/29/15, at 10-11.

On April 30, 2015, while Appellant's Luzerne County litigation was pending, Total, as assignee of the Bank's judgment interest against Total Landscaping, filed the instant motion for a charging order under the Uniform Partnership Act, seeking judicial sale of Appellant's 50%-interest in BSL Partnership.[2] The trial court issued a rule to show cause why the motion

_____

[2] Total's motion relied upon the then-current 15 Pa.C.S.A. § 8345. We note that our legislature repealed and replaced Chapter 83 of the Uniform

should not be granted, and Appellant filed a counseled reply and new matter in response to Total's motion. In her reply and new matter, Appellant referred to her Luzerne County action against Scott and alleged, *inter alia*, that "[e]ven if [she were] liable . . . on [the Bank's judgment], equity would prevent the relief requested. [Scott] has caused Linde Corp. to fire [Appellant], terminate her benefits and deny her any distribution on account of her ownership . . . and [h]is own actions have prevented [Appellant] from being able to repay any amounts she may owe." Appellant's Reply & New Matter to Mot. for Charging Order (Reply & New Matter), 6/23/15, ¶ 16. On July 16, 2015, Total filed preliminary objections to Appellant's new matter averring, *inter alia*, that Appellant's reliance on the Luzerne County lawsuit was irrelevant, "immaterial and inappropriate." Total's Prelim. Obj. to New Matter, 7/16/15, ¶ 6. On September 14, 2015, following argument, the trial court sustained Total's preliminary objections and dismissed Appellant's new matter.

The trial court scheduled an evidentiary hearing on Total's motion for a charging order for December 29, 2015. On November 25, 2015, Appellant filed a contested motion to reschedule the hearing, and the trial court heard argument on this motion on December 16, 2015. At the outset of the proceeding, however, Appellant's counsel, Gary Schildhorn, Esq., who

---

Partnership Act such that, effective February 21, 2017, charging orders are governed by 15 Pa.C.S.A. § 8454.

- 4 -

appeared by telephone, advised the court, "[C]urrently [Appellant] has terminated my representation because of [a] prior ruling [requiring him to appear for the hearing in person]. And so I would have to clarify with [Appellant] that I'm still counsel[.]" N.T., 12/16/15, at 3-4. The following exchange ensued:

> **THE COURT:** Well you're counsel until you're not counsel. So I'll be happy to have you talk with her now.
>
> **[APPELLANT]:** Yes. I'm here Gary.
>
> **THE COURT:** Okay. If you want to make an oral motion to withdraw at this time I'll consider your oral motion and then we will [sic]
>
> **ATTORNEY SCHILDHORN:** I wasn't withdrawing your Honor, it was the circumstances that compelled my client to actually terminate me. She couldn't afford to pay me travel for five hours to attend the hearing and so based on her financial circumstances at the time she said "No Gary you don't come, I'll terminate you, and I'll handle it myself."
>
> **THE COURT:** Alright.
>
> **ATTORNEY SCHILDHORN:** So that's, I wasn't seeking to withdraw[,] I was terminated due to the financial statement that she had to make but if your Honor would permit me to argue the motion for continuance I'm prepared to do so.
>
> **THE COURT:** Well.
>
> **ATTORNEY SCHILDHORN:** But I couldn't if she didn't want to pay me.
>
> **THE COURT:** Well let me ask [Appellant] now, do you want Attorney Schildhorn to continue his representation of you? If you say no, then I will say to him "Have a Merry Christmas" and hang up the phone with him and you argue [the motion yourself]. If you say, yes I'd like him to continue I'll have [Attorney] Schildhorn argue on your behalf.

**[APPELLANT]: Thank you your Honor. I would like him to continue.**

*Id.* at 4-5 (emphasis supplied). Later in the proceeding, the trial court again asked Appellant, more than once, whether she intended to terminate Attorney Schildhorn, but Appellant confirmed she would continue with his representation. *Id.* at 10-11.

In arguing for a continuance of the December 29, 2015 hearing, Attorney Schildhorn represented that he would be in Costa Rica and would not return until January 5, 2016, and that it would not be possible to prepare another attorney from his law firm for the December 29th hearing. *Id.* at 13-14. Attorney Schildhorn also referred to the Luzerne County action, arguing:

> As your Honor is aware, [Appellant] is in litigation with the owners of the Plaintiff in the action before you.[3] That litigation has been completed [in Appellant's favor] as on a trial as to liability [and] a hearing has been scheduled for Friday . . . to move to damages . . . . It is beyond doubt that [Scott and Total] . . . will owe [Appellant] a substantial amount greater that what she could possibly owe under [Total's judgment in this case. Appellant is] requesting a continuance to a date subsequent to when the liability [sic] stage of the Luzerne County matter will be completed, that way she can exercise a set off rights. If she is unable to continue the hearing then her set off rights will be lost. There is no prejudice to [Scott and Total] because they know that they owe money beyond what she currently owes . . . .

*Id.* at 5. In response, Total argued, *inter alia*, that an appeal was taken in

---

[3] While the Luzerne County action was purportedly filed against Scott and directors of Linde Corporation, **see** Appellant's Mot. to Reschedule Hearing, Exh. A (Luzerne Co. Trial Ct. Op.), Appellant's arguments at the December 16, 2015 hearing, as well her appellate brief, identified the Luzerne County defendants as members of Total.

the Luzerne County case, and thus the trial court would lack jurisdiction to conduct any proceeding that Friday, and in any event, Appellant's arguments concerning the Luzerne County matter—which the trial court had already ruled against—were immaterial to the "very simple matter under the [U]niform [P]artnership [A]ct [of] a charging order." *Id.* at 6-8, 14. The trial court indicated that it would issue a ruling on the following day.

On December 17, 2015, the trial court entered an order denying Appellant's request for a continuance, and the record indicates that copies of the order were served upon the parties' counsel on December 21, 2015.[4] The hearing thus proceeded as scheduled on December 29, 2015. However, neither Appellant nor her counsel was in attendance and the trial court conducted the hearing in Appellant's absence.[5] Total offered testimony and evidence regarding the validity and amount of the Bank's judgment against Total Landscaping, the partnership agreement for BSL Partnership, and a copy of the praecipe to assign the Bank's judgment to Total.

On January 22, 2016, the trial court issued a charging order against Appellant's 50%-interest in BSL Partnership. Notice of the charging order was

---

[4] The order was dated December 17, 2015 and entered on the docket on December 18, 2015.

[5] The trial court stated on the record: "It's now twenty minutes of the hour. The appointed time was 9:30 A.M., so I've waited ten minutes in the event [Appellant] decided to appear either with counsel or in person and she has not appeared and we will proceed at this point in time." N.T., 12/29/15, at 3.

served upon both Appellant and Attorney Schildhorn. The record suggests that this is the last time the trial court served Attorney Schildhorn with notice in this case, as all subsequent orders and correspondence were served directly upon Appellant.

On February 8, 2016, Appellant filed a *pro se* motion for reconsideration which the trial court denied that same day. Appellant next filed a *pro se* notice of appeal. On March 14, 2016, the trial court entered a Pa.R.A.P. 1925 order directing Appellant to file a concise statement of errors complained of on appeal. Appellant filed a timely *pro se* Rule 1925(b) statement on March 30, 2016 and the trial court issued an opinion on April 20, 2016.

Appellant raises the following issues for our review:

1. Whether the trial court erred in holding a hearing on the merits on December 29, 2015 and ruling against [Appellant] without [Appellant] being present when the court failed to provide [Appellant] with any notice whatsoever of its ruling on [her] motion for a continuance of the hearing argued on December 16, 2015.

2. Whether the trial court committed an error of law in ruling against [Appellant] on the merits of [Total's] request for a charging order where [Appellant] alleged meritorious defenses to the charging order and no effort was made to make sure [Appellant] was aware the hearing was occurring.

3. Whether the trial court erred in conducting a hearing on the merits on December 29, 2015 in light of: (a) an opinion and order entered by President Judge Hughes of Luzerne County finding the owners of [Total] guilty of conspiracy to oppress [Appellant]; (b) the prosecution of the charging order was part of the oppression; (c) Judge Hughes had established a hearing to award [Appellant] damages, including attorney's fees; and (d) the court was aware that because of the conspirators' oppression, [Appellant] had no money for a lawyer, no prejudice would be suffered by [Total] if the hearing was continued and any adverse ruling prior to the

> proceedings in Luzerne County would extinguish [Appellant's] right to setoff.

Appellant's Brief at 5 (unnecessary capitalization omitted).

Preliminarily, we note that Appellant's *pro se* brief does not comply with the requirements of the Pennsylvania Rules of Appellate Procedure. Her entire argument section, spanning less than two pages in length, is not "divide[d] into as many parts as there are questions to be argued" and is devoid of any legal authority. **See** Pa.R.A.P. 2119(a) (argument shall be divided into as many parts as there are questions to be argued, followed by such discussion and citation of authorities as are deemed pertinent). We remind Appellant that although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit. **See Wilkins v. Marsico**, 903 A.2d 1281, 1284-1285 (Pa. Super. 2006) (citations omitted). Nevertheless, because we discern the gist of her claims and because the trial court addressed them, we decline to find waiver. **See** Pa.R.A.P. 2101 (briefs shall conform in all material respects with Pa.R.A.P. as nearly as the circumstances of the particular case will admit, and if there are substantial defects in the brief, appeal may be quashed or dismissed).

Furthermore, we note that while Appellant's three stated issues overlap, they may be parsed into two distinct challenges. First, Appellant argues that the trial court's decision to conduct the December 29, 2015 hearing in her absence denied her due process. Second, Appellant contends that the trial court committed an error of law by issuing a charging order against her

interest in BSL Partnership. We will begin with Appellant's due process challenge.[6]

Appellant argues that the court erred when it failed to provide her with notice of its denial of her continuance request. She contends that at the December 16, 2015 hearing, the trial court:

> confirmed that I had terminated my counsel and that he would be out of the country from December 18, 2015 through January 4, 2016. I advised the [c]ourt that if the hearing were not continued I would be representing myself at the December 29, 2015 hearing for a charging order.
>
> At no time after the December 16, 2015 hearing did I receive notice regarding the disposition of my [m]otion for [c]ontinuance . . . . Even though he was no longer representing me, my former counsel e-mailed [Total's] counsel to inquire if the [trial court] had entered an [o]rder with respect to the [continuance]. No reply was ever received to this e-mail.
>
> \*    \*    \*
>
> . . . The [t]rial [c]ourt made no effort to determine if I had any notice that the [December 29, 2015] hearing was being held.

Appellant's Brief at 7. In support of her argument, Appellant appends to her brief "an article which contains an extensive discussion of the requirements of

_____

[6] As an initial matter, we must determine whether the order is a final, appealable order pursuant to Pa.R.A.P. 341. *See* Pa.R.A.P. 341(b) ("[a] final order is any order that . . . disposes of all claims and of all parties . . . . "); *McCutcheon v. Philadelphia Elec. Co.*, 788 A.2d 345, 349 (Pa. 2002) ("jurisdiction is a threshold issue that the court may consider of its own motion and at any time"). The order granting Total's motion for a charging order follows from a hearing on the merits and disposes of all claims and parties. Accordingly, we conclude that the order is final and that we have appellate jurisdiction.

due process for a civil proceeding." ***Id.*** at 8. The article, entitled "The Requirements of Due Process," cites United States Supreme Court jurisprudence generally related to procedural due process. Appellant "direct[s] the Court to page 4 of the article which specifically discusses the notice requirements to meet due process standards." ***Id.***

Issues involving the violation of due process are purely legal; therefore, our standard of review is *de novo* and our scope of review is plenary. ***Wirth v. Commonwealth***, 95 A.3d 822, 836 (Pa. 2014). It is equally "settled that notice is a fundamental requirement of due process," and "[n]otice is deemed adequate when it is reasonably calculated to inform a party of the pending action and provides the party an opportunity to present objections to the action." ***Wilkes v. Phoenix Home Life Mut. Ins. Co.***, 902 A.2d 366, 383 (Pa. 2006). "[T]he approach to determining what notice is adequate must be flexible and non-technical," and "[t]he form of the notice required depends on what is reasonable, considering the interests at stake and the burdens of providing notice." ***Id.***; ***Noetzel v. Glasgow, Inc.***, 487 A.2d 1372, 1377 (Pa. Super. 1985). "As long as a method of service is reasonably certain to give notice to a defendant that an action is pending against him, the fact that such defendant fails to receive actual notice does not invalidate service on due process grounds." ***Noetzel***, 487 A.2d at 1377-78. Additionally, "due process does not confer upon an individual the right to be deliberately obtuse to the nature of a proceeding." ***Wilkes***, 902 A.2d at 383.

In its opinion, the trial court expressly stated that "[t]he record reflects that [Appellant], through service of counsel, had notice of the December 17, 2015 court order" denying Appellant's request for a continuance. Trial Ct. Op., 4/20/16, at 2. It further reasoned, "It is through no fault of this [c]ourt that [Appellant] assumed her [motion] was granted." *Id.* We agree with the trial court.

Contrary to Appellant's claim in her brief that she informed the court at the December 16, 2015 hearing that she had terminated Attorney Schildhorn, the record indicates otherwise. As noted above, Appellant specifically affirmed her intention to proceed with Attorney Schildhorn's representation. N.T., 12/16/15, at 4-5, 10-11. At some point—Appellant does not specify when—she decided to proceed *pro se*, yet the record does not contain any petition by Attorney Schildhorn to withdraw his appearance, and Appellant does not aver that she ever attempted to inform the court of her *pro se* status. Appellant does not refute that notice of the continuance denial was served upon Attorney Schildhorn on December 21, 2015, and she does not address why, despite no longer being represented by Attorney Schildhorn, she failed to contact either Attorney Schildhorn or the court for information regarding her case or the status of her request for a continuance. Further, Appellant provides no justification for why, in the alleged absence of any decision on her continuance request, she did not appear at the hearing as it was originally scheduled. Appellant does not address the trial court's observation that she improperly

- 12 -

assumed her motion would be granted, and due process does not afford her the right to be "deliberately obtuse to the nature of a proceeding." ***See Wilkes***, 902 A.2d at 383. Appellant's due process argument is without merit.

Next, Appellant argues that the trial court committed an error of law in granting the charging order where she raised meritorious defenses. Specifically, Appellant contends that the Luzerne County trial court was to award her damages against Total which "would far exceed any amounts that [she] owed" to Total in the instant action. Appellant's Brief at 8. She also claims, without further explanation, that she was denied the opportunity to present evidence that "in the bankruptcy proceedings of Total[,] a Mr. Hessling presented testimony which proved that the amount of the Judgment was incorrect and could be evidence that a fraud on the Court occurred."[7] ***Id.*** at 9.

The charging order was issued pursuant to the then-current Section 8345 of the Uniform Partnership Act, which provided:

> **(a) General Rule.**—On due application to a competent court by any judgment creditor of a partner, the court which entered the judgment, order or decree, or any other court, may charge the interest of the debtor partner with payment of the unsatisfied amount of the judgment debt with interest thereon and may then or later appoint a receiver of his share of the profits, and of any other money due or to fall due to him in respect of the partnership, and make all other orders, directions, accounts and inquiries which the debtor partner might have made or which the

---

[7] In the instant matter, Robert Hessling testified that he was the treasurer of and on the board of directors of Linde Corporation as well as a member of Total. N.T., 12/29/15, at 10-11.

circumstances of the case may require.

**(b) Redemption.**—The interest charged may be redeemed at any time before foreclosure or, in the case of a sale being directed by the court, may be purchased without thereby causing a dissolution

(1) with separate property, by any one or more of the partners; or

(2) with partnership property, by any one or more of the partners with the consent of all partners whose interests are not so charged or sold.

15 Pa.C.S.A. § 8345, *repealed* Nov. 21, 2016, *eff.* Feb. 21, 2017. This Court has stated a motion for a charging order, under the predecessor statute, may be reviewed with a "full inquiry . . . in the facts[ by a] court exercising equitable jurisdiction in the matter." ***Northampton Brewery Corp. v. Lande***, 2 A.2d 553, 554 (Pa. Super. 1938).

The trial court heard testimony supporting, *inter alia*, the validity of the underlying judgment, Total's status as the judgment creditor, the valuation of the net book value of Appellant's ownership interest in BSL Partnership, and the unsatisfied amount of the judgment, including credits offsetting Total Landscaping's obligation. N.T., 12/29/15, at 7, 10-30. As stated above, the trial court dismissed Appellant's new matter, which relied in part on the status of the Luzerne County action, and the certified record indicates that Appellant's counsel, Attorney Schildhorn, had presented variations of this

same argument throughout this case.[8] The trial court, upon equitable review of the uncontroverted factual testimony and supporting exhibits, issued a charging order against Appellant's interests in BSL partnership. In sum, Appellant has not presented any meritorious argument to support her assertion of trial court error. We therefore affirm the charging order entered on January 22, 2016.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/13/18

---

[8] *See, e.g.,* Appellant's Reply & New Matter at 6 (averring that the charging order was a vehicle for Total "to strip away from [Appellant] her partnership interest in the BSL Partnership"); Appellant's Brief in Support of Resp. to Total's Prelim. Obj., 8/31/15, at 2-3 (questioning, *inter alia*, "whether [Total] was the proper holder of the [j]udgment, whether the transaction . . . was a subterfuge, whether the amount still owed under the [j]udgment was inflated" and whether a charging order would be equitable under the facts); N.T., 12/16/15, at 5-6.