518 A.2d 1274

**Margaret M. ROSS**

v.

**Jack N. ROSS, Appellant.**

Superior Court of Pennsylvania.

Argued April 9, 1986.

Filed Dec. 22, 1986.

358

James R. Leonard, Jr., Lancaster, for appellant.

Stephen L. Needles, Richboro, for appellee.

Before BECK, POPOVICH and HOFFMAN, JJ.

BECK, Judge:

This is an appeal from an order dated May 1, 1985 [1] by the Bucks County Court of Common Pleas reinstating

1. We recognize that this appeal was not filed until August 2, 1985, and is therefore ostensibly in violation of Pa.R.A.P. 903(a) (an appeal must be taken within 30 days of the date of entry of the order from which the appeal is sought).

appellant-father's support arrearages. The order was entered in response to a Motion to Reinstate Arrears filed on April 30, 1985 by a Domestic Relations Officer representing appellee-mother. The record reveals that the order was entered without notice to the father who, therefore, had no opportunity to respond to the reasons set forth in the motion in support of reinstatement of arrears. We hold that the entry of this ex parte order was improper and reverse.

A review of the complicated procedural history of this appeal is warranted. However, because the interrelationship of the statutes and rules governing support matters is somewhat complex and because all of the support statutes and rules have been amended and/or reenacted or recodified in recent years, a review of the facts would be meaningless without first providing a legal context.

Support matters are generally governed by the Civil Procedural Support Law, 42 Pa.Cons.Stat.Ann. §§ 6701—13 (1982), *amended by and reenacted at* 23 Pa.Cons.Stat.Ann. §§ 4301–53 (Supp.1986) (the "Support Law"). The Support Law generally governs actions for support where the interstate enforcement of a support obligation is not implicated.

The procedure to be followed in an action under the Support Law is set forth in the Rules of Civil Procedure concerning Actions for Support (the "Support Rules"). Pa. R.C.P. 1910.1–.31 (1986). The basic form of these rules was originally promulgated in 1981, although certain of the rules were amended or rescinded in 1985 and 1986. *See, e.g.,* Pa.R.C.P. 1910.2, 1910.6(b). When promulgated in

In a *per curiam* order, our court denied appellee-wife's motion to quash the appeal on grounds of untimeliness, for the reason that the lower court's docket bears no indication that notice of the entry of the order was given to appellant-husband as required by Pa.R.C.P. 236 (the prothonotary shall immediately give written notice of the entry of any order, decree or judgment of each party of record, and shall note in the docket the giving of the notice). The appellee's motion for reconsideration of the denial of the motion to quash was also denied, and she again raises the issue of timeliness in her appellate brief. We accept the appeal for the same reasons that supported our prior denial of the wife's motion to quash.

1981, the Support Rules specifically provided that they would "govern all civil actions or proceedings brought in the court of common pleas to enforce a duty of support." Pa.R.C.P. 1910.1(a). As Rule 1910.31 and the Note to Rule 1910.1 indicate, the rules suspend and supercede certain of the procedural provisions of the Support Law. Many of the procedural provisions in the prior Support Law have been omitted in the 1986 Support Law because the Support Rules provide the procedural requirements. Act 1982, Dec. 20, P.L. 1409, No. 326, art. II; 23 Pa.Cons.Stat.Ann. §§ 4341–2.

In addition to the foregoing, Pennsylvania has enacted the Revised Uniform Reciprocal Enforcement of Support Act, 42 Pa.Cons.Stat.Ann. §§ 6741—80 (1982), *amended by and reenacted at* 23 Pa.Cons.Stat.Ann. §§ 4501–40 (Supp. 1986) ("RURESA"). RURESA generally governs support matters where one of the parties resides outside the Commonwealth and enables a Pennsylvania resident to obtain enforcement of a support obligation through proceedings in another state. The Support Rules specifically do not govern the procedure to be followed under the interstate reciprocal provisions of RURESA. Pa.R.C.P. 1910.1(b)(1)(a).

As to *intra* state or inter county support obligations, there are three relevant enactments, RURESA, the Support Law and the Support Rules. RURESA contains provisions relating to certain *intra* state matters arising where the parties are in different counties within Pennsylvania. 42 Pa.Cons.Stat.Ann. § 6773, *amended by and reenacted at* 23 Pa.Cons.Stat.Ann. § 4533. The Support Law in Sections 6712 and 6713 also provide for the situation where the parties reside in different counties. 42 Pa.Cons.Stat.Ann. §§ 6712–13, *amended by and reenacted at* 23 Pa.Cons.Stat. Ann. § 4352. The Support Rules do *not* govern these provisions.

The Support Rules provide yet another procedural route. The introductory Explanatory Note to the Support Rules as they were originally enacted in 1981 explained that the rules provide a third alternative procedure for intrastate support matters. *See also* Note to Pa.R.C.P. 1910.1(a).

The Rules facilitate the enforcement of a support obligation where the obligee and the obligor are in different counties by providing liberalized venue and service of process requirements in such situations. Pa.R.C.P. 1910.2, 1910.6(b).[2]

In the context of intrastate support obligations both the Support Law and RURESA require the transfer of a support matter to the proper jurisdictional forum where the parties are in the Commonwealth but are in different counties. Section 6773 of RURESA states that in such a situation, if the court of the county in which the petition for support is filed finds that the petition sets forth facts from which it may be determined that the obligor owes a duty of support and that a court of another county may obtain jurisdiction over the obligor or his property, the matter must be transferred to the other county. 42 Pa.Cons.Stat. Ann. § 6773, *amended by and reenacted at* 23 Pa.Cons. Stat.Ann. § 4533.

Section 6712 of the Support Law similarly provides as follows:

> If the court of the county acting as an initiating county finds that the complaint sets forth facts from which it may be determined that the defendant owes a duty of support or the defendant is in default in payment on an order of support and that jurisdiction cannot be obtained over the defendant or his property as prescribed by general rule or that there has been an election to proceed under this section, and that the court of the responding

2. Rule 1910.2, relating to venue, was further amended in 1985. Rule 1910.6(b), relating to service of process, was simultaneously rescinded. These changes were made in conjunction with the 1985 amendments to the service of process rules, Pa.R.C.P. 400–41, and reflect the consolidation in Rules 400–1 of all the rules governing service of process and other legal papers. Rule 411 now specifically covers service in support matters. As the Explanatory Comment preceding the 1985 version of Rules 400–41 and the Note following Rule 411 explain, these changes do not affect the procedure to be followed. Because of the corresponding changes in the support venue rule, Pa.R.C.P. 1910.2, new Rule 411 leaves the prior practice in support actions involving intercounty matters unchanged. Because these amendments to the rules post-date the matters on appeal here, they are not applicable to this case.

county may obtain jurisdiction, it shall so certify to the responding county and shall cause three copies of the complaint or order and its certification to be transmitted to the court in the responding county.

42 Pa.Cons.Stat.Ann. § 6712, *amended by and reenacted at* 23 Pa.Cons.Stat.Ann. § 4533.

These sections in RURESA and the Support Law have been construed as *mandating* the transfer of any support matter that falls within their provisions. *Commonwealth ex rel. Powell v. Powell,* 238 Pa.Super. 369, 373–374, 357 A.2d 566, 568 (1976).

In the context of intrastate support the Support Rules provide an alternative to transfer by permitting the plaintiff to call the defendant back to the plaintiff's county of residence to defend against the support action if the plaintiff's county of residence is the place of the last family domicile and the plaintiff has continued to reside there. Pa.R.C.P. 1910.2, 1910.6(b) & 411 (*see* footnote 2, *supra*).

The Support Rules do, however, provide for the transfer of a support action, either before or after a support order has been entered, where the court determines that for the convenience of the parties and witnesses, the matter should be heard in a different county. Pa.R.C.P. 1910.8. The rule embodies the concept of forum non conveniens in support actions and permits transfer only to a county where the action could have been brought either originally or at the time of transfer.

Consistent with the foregoing, Support Rule 1910.18 permits later proceedings to modify, terminate or enforce a support order to be brought in the court where the order was originally entered or, if the action has been transferred, in the court to which it was transferred. Pa.R.C.P. 1910.18. Rule 1910.18 implements Section 6710 of the Support Law, which provides as follows:

The court making [an] order [of support] shall at all times maintain jurisdiction of the cause for the purpose of enforcement of the order and for the purpose of increasing, decreasing, modifying or rescinding such order, with-

out limiting the right of a complainant to commence additional proceedings for support in any county wherein the defendant resides or where his property is situated ... The court may at any time remit, correct or reduce the amount of any arrearages. This section shall apply to all support orders whether entered pursuant to this chapter or any other provision of law.

42 Pa.Cons.Stat.Ann. § 6710, *substantially reenacted at* 23 Pa.Cons.Stat.Ann. § 4352. In construing Section 6710, this court has repeatedly stated that a change in the county of residence of one party does not oust the jurisdiction of the court that entered the original support order. *Commonwealth ex rel. Leider v. Leider*, 335 Pa.Super. 249, 484 A.2d 117 (1984); *Commonwealth ex rel. Fiebeg v. Fiebeg*, 258 Pa.Super. 300, 392 A.2d 804 (1978).

Against this background, we turn to the complex procedural scenario of this case. In this case, the original support order was entered in 1979 in Bucks County where both parties then resided. After six years, and several intervening actions, the appellee-mother attempted to enforce an alleged support obligation of the appellant-father who then resided in Lancaster County.[3] The result of the mother's action is the Bucks County Court's order of May 1, 1985 that is the subject of this appeal.

In 1979, pursuant to the Support Law, the Bucks County Court of Common Pleas ordered the father to pay $70 per week in support of his two children. Thereafter, the father relocated to New York. At that time, he was in arrears on his support payments.

On August 10, 1982, the mother filed a petition in Bucks County under RURESA seeking to enforce the father's support obligations and to collect the arrearages under the 1979 order. The petition was certified by the Bucks County

3. We should note that at all times pertinent to this appeal, the 1985 amendments to and reenactments of the Support Law and RURESA were not yet effective. Thus, our analysis proceeds under the versions of those statutes found in Title 42, not in Title 23.

Court to the Family Court of Onondaga County, New York in accordance with the provisions of RURESA.

Following a hearing in New York on the mother's RURESA petition, at which both parties were present, the New York Court entered an order on December 7, 1982 directing the father to pay $70 per week in child support and vacating the arrears up to November 5, 1982, "due to present unemployment of [father]." The effect of the order appears to have been to vacate the arrears for a period of three months; from the date of the petition, August 10, 1982, to the date stated in the order, November 5, 1982.[4]

In January 1983, the Domestic Relations Office of Bucks County, acting apparently on behalf of the father, filed a motion to vacate the 1979 Bucks County support order "by reason of Order entered in Syracuse Court." The Bucks County Court subsequently vacated the order with "all arrearages forgiven."

Then, in March, 1983, upon application of the father, the New York Court entered a second order suspending its original December 7, 1982 order due to father's unemployment and also due to the self-sufficiency of one of the parties' children. Up to this point the New York court has suspended the arrears from August 10, 1982 to November 5, 1982 while the Bucks County Court has apparently vacated all arrears to November 5, 1982.

In March, 1985, the mother filed another complaint in support under RURESA in Bucks County Court. On April 30, 1985, the Bucks County Domestic Relations Office filed a Motion to Reinstate Arrears which resulted in the May 1, 1985 order and this appeal. The Motion sought reinstatement of all arrears up to November 6, 1982, allegedly totalling $3,646.34.[5] The sole reason for reinstatement pro-

4. The father disputes the effect of this order, contending it vacated all arrears accrued to November 5, 1982.

5. In April, 1983, the mother filed a petition in Bucks County to reinstate arrears. The petition sought to reinstate arrears only up to August 5, 1982, in the amount of $2,851.00, since the petition alleged that the New York court's order had suspended only the arrears accruing during the period from August 10, 1982 to November 5, 1982.

vided in the Motion was that "plaintiff believes that the defendant was working 'under the table' during this time and that the arrears should not have been vacated."

Having issued its order reinstating the arrears on May 1, 1985, two days later, on May 3, 1985, pursuant to the provisions of RURESA, the Bucks County Court transferred the support proceedings to Lancaster County. 42 Pa. Cons.Stat.Ann. §§ 6754, 6773.[6]

Appellant-father raises three issues for review all relating to the Bucks County order of May 1, 1985: (1) that the Bucks County Court lacked authority to issue the May 1,

Shortly thereafter, a rule to show cause on the petition was entered. Nevertheless, it appears that no further action was taken with respect to the petition. Since the mother's April, 1983 Petition to Reinstate Arrears up to August 5, 1982 stated that the arrears at that time were $2,851.00, we have been unable to ascertain how the April 30, 1986 Motion's figure of $3,646.34 was calculated. To add to the confusion, the record reveals that on April 9, 1985, an accountant's certificate was issued certifying that the arrears as of April 30, 1983 totalled only $1,210.00. This certificate recites that it is based on the records of the Bucks County Domestic Relations Section.

6. Inexplicably, on July 1, 1985, the Bucks County Court entered a further "Order" entitled "Registration of Support Order," and again transferred the matter to Lancaster County. In this document, the Court recited that the father was under an order of support entered in Bucks County in the amount of $70.00 per week and owed arrearages in the amount of $3,646.34. The Court further recited that it appeared that the Lancaster County Court could obtain jurisdiction of this matter and, therefore, that the findings regarding the father's support and arrearages liabilities were certified to Lancaster "in accordance with the Civil Procedural Support Law of July 13, 1953, P.L. 431, 62 P.S. 2043.31 et seq...." By this order, the Bucks County Court apparently intended once again to transfer the matter to Lancaster County, this time not under RURESA but rather under Section 6712 of the Support Law. Presumably this transfer was effected to transfer enforcement of the May 1, 1985 order to Lancaster.

This Court is admittedly confused as to the procedure followed in this regard by the trial court. The May 3rd transfer related only to arrears. The July 1, 1985 transfer order recites that the father is under a 1979 order of the Bucks County Court pursuant to which the father is obligated to pay $70.00 per week in support. We assume that the Bucks County Court was hereby referring to the original Bucks County support order in 1979. However, that order had been completely vacated by the same court's order in January, 1983. That obligation had been suspended in New York and vacated in Bucks County. It was never reinstated. The May 1, 1985 order only reinstated the arrearages.

1985 Order reinstating arrears because the New York court had vacated those arrears; (2) that the May 1, 1985 order is invalid because it was entered without prior notice to father and a hearing; and (3) that the trial court acted improperly in entering the May 1, 1985 order based entirely on hearsay.

We find merit in the second allegation of error and, therefore, reverse. However, we preliminarily note that appellant-father's first argument raises an important issue concerning the interaction of the Full Faith and Credit Clause and RURESA which the court should address on remand. Since we revolve the matter sub judice based on the failure to provide notice, we shall not address the other issues, which are more properly resolved in the first instance by the trial court.

The trial court's opinion in support of the May 1, 1985 order sheds little light and offers no precedent in support of its ex parte order. The trial court was apparently of the view that in reinstating the arrears the May 1, 1985 order merely corrected on the records of Bucks County an error that had been made when the 1979 order was vacated. As such, the trial court apparently concluded that a hearing or even notice to the father was not required. We disagree.

■ Our standard for reviewing support is limited to a determination of whether the trial court abused its discretion. *Commonwealth ex rel. McClelland v. McClelland,* 303 Pa.Super. 540, 450 A.2d 58 (1982) (*citing Commonwealth ex rel. Caswell v. Caswell,* 280 Pa.Super. 359, 421 A.2d 762 (1980)). Where a trial court has acted to modify an existing support order, that action is justified only when supported by clear and positive evidence after a hearing on the merits. *Id.* (*citing Commonwealth ex rel. Rubin v. Rubin,* 230 Pa.Super. 591, 326 A.2d 578 (1974)).

Although most of our cases that impose this requirement concern modification of support orders due to changed circumstances of the parties, we have previously considered cases involving support matters where numerous other forms of ex parte action have been taken by a trial court and has had a potentially negative impact on the party to

whom no notice of the action or opportunity to be heard has been given. We have consistently not permitted such ex parte actions to stand. *Bliss v. Bliss*, 343 Pa.Super. 17, 493 A.2d 780 (1985). *See also Commonwealth v. Pressley*, 331 Pa.Super. 43, 479 A.2d 1069 (1984); *Commonwealth ex rel. Fiebig v. Fiebig, supra.*

Moreover, our Rules of Civil Procedure specifically require that "copies of all legal papers other than original process filed in an action or served upon any party to an action shall be served upon every other party to the action." Pa.R.C.P. 440 (formerly Pa.R.C.P. 233). The Rules further require that the prothonotary immediately give notice to all parties of the entry of any order, decree or judgment. Pa.R.C.P. 236. Neither of these notices were given in this case.

We find that the Buck's County order of May 1, 1985 did more than set the record straight. It adversely affected the position of the father, and therefore notice to him was required. Prior to the May 1, 1985 order, the father had been relieved of at least some of the arrears accruing up to November 5, 1982 in New York and had been completely relieved of liability for any arears in the Bucks County Court. After the May 1, 1985 order, the father was subject to an order for those arrearages.

Moreover, the trial court later certified the existence of this order to Lancaster County, presumably for purposes of enforcement. Since the purpose of the transfer was enforcement of the arrears, the Lancaster County Court could not modify or vacate the order. *Commonwealth ex rel. Soloff v. Soloff*, 215 Pa.Super. 328, 257 A.2d 314 (1969).

In *Soloff*, the Philadelphia court was the intiating court and had entered an order of support. The mother later instituted additional proceedings for support in Montgomery County under the Support Law and Montgomery County entered another support order. The mother relied upon the then effective version of Section 6710, quoted above, which permits additional support proceedings in counties

other than the intiating county. The court reversed the Montgomery County order stating:

> [Section 6710] authorizes the courts throughout the Commonwealth to enforce existing orders by attachment or execution and not the entry of additional orders or the modification of an existing order.

> Once the jurisdiction of a court attaches in a support case it continues until the matter is completely and finally determined. And it is res adjudicata as to all attempts to infringe upon the courts' power to control its own order.

*Id.*, 215 Pa.Superior Ct. at 332, 257 A.2d at 317.

Thus, because of the entry of the May 1, 1985 order, the father here would not be able to contest his liability for the arrearages in the Lancaster County Court because that court is bound to follow and merely enforce the order. And obviously the father was foreclosed from contesting this liability in the Bucks County Court by that court's ex parte entry of the order. The harm to the father is manifest.

We remand for further proceedings consistent with this opinion.