614 A.2d 733

**Bonnie L. SCHOENFELD, Appellant,**

**v.**

**Kenneth S. MARSH, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 3, 1992.

Filed Sept. 4, 1992.

470

Thomas M. Junker, Pittsburgh, for appellant.

Kenneth S. Marsh, appellee, pro se.

Before TAMILIA, KELLY, and MONTGOMERY, JJ.

KELLY, Judge:

In this Opinion we are called upon to determine whether the trial court properly modified a registered foreign order for child support and alimony, based on the foreign court's reduction of the father's support obligation, to a date occurring prior to the father's Pennsylvania petition to modify the registered foreign order. We find that the trial court did not abuse its discretion. Therefore, we affirm.

The relevant facts and procedural history, succinctly stated by the trial court, are as follows:

[t]his support case originated in 1985 in West Virginia, the state of the parties' last marital domicile. On February 23 of that year, Mother filed a complaint for divorce in the Circuit Court of Harrision County, West Virginia. Prior thereto, the parties had entered into a marital settlement agreement, pursuant to which Father agreed to pay $200 per month alimony to Mother and $1,000 per month child support for the parties' two children, Amy (now age 11) and Beth (now age 8). (*See* January 22, 1985 Agreement). This agreement was later incorporated into the final divorce decree entered by the West Virginia court on March 21, 1986.[1]

In July of 1987, Father filed a petition for modification, seeking termination of his alimony obligation and a reduction in his child support obligation. The basis of Father's petition was his recent loss of employment with Georgia

1. This order was later modified to reduce Father's child support obligation for the summer months during which he exercised full visitation rights. (*See* May 19, 1987 West Virginia order).

Pacific Corporation, where he had been earning approximately $32,000 per year.

An initial hearing on Father's petition was held before West Virginia Family Law Master Cornelia Reep on July 6, 1987. A second hearing was held on October 11, 1987, following which the Family Law Master recommended that Father's petition be held in abeyance until certain financial information was provided to the court.... A third and final hearing on Father's petition was held on December 10, 1987. For reasons unknown to this court, [the Family Law Master] did not issue her final recommendation on the merits of Father's modification petition until ten months later, in September of 1988. By that time, Father apparently had moved to Pennsylvania and Mother had registered the divorce decree and the West Virginia support orders with Allegheny County Family Division for enforcement pursuant to the Revised Uniform Reciprocal Enforcement of Support Act. By order dated July 18, 1988, Allegheny County court confirmed the West Virginia orders [of] 3–21–86; 5–19–87; 10–2–87, and calculated arrears owing under those orders at $12,975.00, as of June 2, 1988. The Pennsylvania order also provided for wage attachment and contempt proceedings in the event Father failed to comply with this order.

On August 8, 1988, Father petitioned this court to stay enforcement of the Pennsylvania order until the West Virginia court had ruled on his modification petition, arguing that the modification, if granted by the West Virginia court, would substantially reduce the arrears enforceable under the Pennsylvania order. Father's petition was denied. (August 11, 1988 Pennsylvania order).

Several months after registration of the West Virginia orders with this court, the West Virginia court finally rendered a decision on the merits of Father's petition. By order dated December 16, 1988, the West Virginia court granted Father's petition and terminated Father's alimony obligation, retroactive to June 1988 (due to Mother's May 1988 remarriage), and reduced Father's monthly child sup-

port obligation from $1,000.00 to $510.00, effective October 1, 1988. Arrears were reset at $7,000 as of December 3, 1988.

Almost one year later, on September 14, 1989, Father filed an appeal with the West Virginia Supreme Court of Appeals on the issue of retroactivity only. On appeal, Father argued that the child support reduction should have been made retroactive either to June 3, 1987 (date of filing petition) or to December 12, 1987 (date of final hearing on petition). Father's appeal was pending for almost one year before the appellate court finally rendered a decision denying the appeal and confirming the effective date of the December 16, 1989 order as being October 1, 1988. (*See* July 16, 1990 appellate decision).

While Father's appeal had been pending in West Virginia, the Pennsylvania order continued to run the same as it had since the registration of the original West Virginia support orders in July of 1988. When the West Virginia appellate court issued its decision, Father filed his petition with this court on August 29, 1990 to change the July 18, 1988 order consistent with the West Virginia appellate decision. This court granted Father's petition by order dated October 17, 1990, which provides in relevant part:

> AND NOW, this 17th day of October, 1990, upon consideration of defendant's Petition to Modify Alimony and Support Obligation in Accordance with West Virginia State Supreme Court of Appeals ruling, the argument thereon, it appearing that the defendant has been under an order of the Circuit Court of Harrison County, West Virginia, dated March 21, 1986, to pay $1,000.00 per month in child support and $200.00 per month in alimony, such order being transferred to this court by this court's order dated July 19, 1988, (which order included acceptance by the court of all arrearages due and owing at that time, plus a judgment entered by the West Virginia Court against defendant and in favor of plaintiff in the amount of $2,575.00 plus interest of 10% as of July 6, 1987); and it appearing that on July 16, 1990, the Supreme Court of

Appeals of West Virginia at No. 19269, issued its opinion confirming the West Virginia Family Court Master's finding that the defendant's monthly child support obligation was to be reduced to the amount of $510.00 effective October 1, 1988, and it also appearing that plaintiff remarried in May, 1988, and therefore the alimony payments of $200.00 per month should have ceased as of June 1, 1988;

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED AND DECREED that the current order for child support shall be modified to provide that defendant is to pay $510.00 per month, retroactive to October 1, 1988. Further, the order that defendant is to pay alimony of $200.00 is hereby suspended retroactive to June 1, 1988. The Wage Attachment is to be modified accordingly.

It is this order that forms the basis for Mother's present appeal.

(Tr.Ct.Op. of 5/2/91 at 1–5).

The mother filed a motion for reconsideration. The trial court denied her motion, finding that 23 Pa.C.S.A. § 4352(e), prohibiting retroactive modification of arrears to a date prior to the date a petition for modification had been filed, did not bar the trial court's actions in this case. It reasoned that the October 17, 1990 order granting the father's petition to modify was "merely a *nunc pro tunc* order consistent with the December 1988 West Virginia order" aimed at recalculating the Pennsylvania court's July, 1988 registration order to reflect the reduction warranted by the West Virginia order. (Tr.Ct.Op. of 5/2/91 at 6–7). The trial court also concluded that a hearing on the father's petition was unnecessary and contrary to both parties' expectations, given their knowledge that the December, 1988 order of the West Virginia court reduced father's support obligation to $510 per month, and that the Pennsylvania registration order would be modified to reflect that reduction. (Tr.Ct.Op. of 5/2/91 at 7–8). This timely appeal followed.

On appeal, the mother raises the following issues for our review:

1. DID THE LOWER COURT HAVE JURISDICTION TO RETROACTIVELY MODIFY ARREARAGES WHICH ACCUMULATED UNDER A PENNSYLVANIA REGISTERED SUPPORT ORDER, PRIOR TO FATHER'S FILING A PETITION TO MODIFY SUCH ORDER IN PENNSYLVANIA?

2. ASSUMING THE LOWER COURT HAD JURISDICTION, DID THE LOWER COURT ABUSE ITS DISCRETION IN REDUCING THE AMOUNT OF THE PENNSYLVANIA SUPPORT ORDER ON OCTOBER 17, 1990, RETROACTIVE TO OCTOBER OF 1988, WITHOUT CONDUCTING A HEARING ON THE MERITS TO DETERMINE THE APPROPRIATE AMOUNT OF CHILD SUPPORT OWED BY THE FATHER DURING THIS PERIOD?

(Wife-appellant's Brief at 4).

The mother raises issues on appeal which challenge the trial court's reduction of support arrears due her under Pennsylvania law, but based on a registered West Virginia support order, to give effect to the West Virginia court's modification of its original support order. Initially, we note that our standard of review over a child support order, or modification of such an award, is well settled. Neither will be overturned absent an abuse of discretion, namely, an unreasonable exercise of judgment or a misapplication of the law. *DeWalt v. DeWalt,* 365 Pa.Super. 280, 529 A.2d 508 (1987); *Fee v. Fee,* 344 Pa.Super. 276, 496 A.2d 793 (1985). *See also Blaisure v. Blaisure,* 395 Pa.Super. 473, 577 A.2d 640 (1990).

Article IV, § 1 of the United States Constitution mandates that each state give "full faith and credit to the ... judicial proceedings of every other state." This mandate applies only to final orders. Thus, our courts have held that modifiable foreign decrees for child support are not entitled to full faith and credit by Pennsylvania courts. *See Oman v. Oman,* 333 Pa.Super. 356, 482 A.2d 606 (1984), *citing Posner v. Sheridan,*

451 Pa. 51, 299 A.2d 309 (1973). *See also Silverstein v. Silverstein,* 246 Pa.Super. 503, 371 A.2d 948 (1977).[2]

In an effort "to improve and extend by reciprocal legislation the enforcement of [modifiable] duties of support," our legislature has adopted the Revised Uniform Reciprocal Enforcement of Support Act, 23 Pa.C.S.A. § 4501 *et seq.* (RURESA). 23 Pa.C.S.A. § 4501(b). Among other things, the RURESA allows our courts to enforce modifiable foreign support orders through a registration process. *See* 23 Pa.C.S.A. §§ 4536 through 4540. The RURESA specifically provides that a foreign support order registered in Pennsylvania has the same effect and deserves the same treatment as a support order issued by a Pennsylvania Court. 23 Pa.C.S.A. § 4540(a).

The Support Act, 23 Pa.C.S.A. §§ 4301 through 4366, governs support proceedings initiated in this state. According to that statute, the court making a support order retains jurisdiction to modify it. 23 Pa.C.S.A. § 4352(a). *See also Bliss v. Bliss,* 343 Pa.Super. 17, 493 A.2d 780 (1985) (Pennsylvania court with jurisdiction to enter valid support order did not lose jurisdiction merely because parties moved from issuing county, but retained jurisdiction to enforce order). Also, Pennsylvania courts may not modify their own support orders retroactively to a date prior to the filing of a petition to modify. 23 Pa.C.S.A. § 4352(e). Further, arrearages accruing pursuant to a support order issued by a Pennsylvania court are entitled to Full Faith and Credit. 23 Pa.C.S.A. § 4352(d).

Our legislature, through the RURESA, clearly requires that our courts treat foreign support orders as if issued by a

---

**2.** Arrearages, which represent rights to support that have already accrued, and which are not modifiable, are entitled to enforcement in Pennsylvania. *Oman, supra* at 362–63, 482 A.2d at 609. *See also Posner, supra* at 57 n. 4, 299 A.2d at 312 n. 4; 72 Standard Pennsylvania Practice § 557. In limited circumstances, a modification may be applied to period before the modification petition was filed. *See* 23 Pa.C.S.A. § 4352(e) (physical or mental disability, misrepresentation of another party, or other compelling reason). *See also Benjamin v. Benjamin,* 408 Pa.Super. 320, 596 A.2d 877 (1991) (compelling reasons existed for retroactive modification of payments: no proceedings against obligor for seventeen years, obligor unable to read or write and relied on attorney's advice, obligor reduced payments unilaterally as children reached emancipation).

Pennsylvania court. 23 Pa.C.S.A. § 4540(a). However, our courts must also be aware that the registered order is subject to modification by the foreign court which made the registered support order. 23 Pa.C.S.A. § 4352(f) (Pennsylvania court may modify registered foreign decree when foreign court declines to do so).

■ This case involves the interaction between the RURESA and the Full Faith and Credit Clause, as they apply to a modification, by a Pennsylvania court, of a registered foreign order for support based on the foreign court's modification of its original support order after registration in Pennsylvania. The question presented here is: where the foreign court modifies an order previously registered in Pennsylvania under the RURESA, how does the Pennsylvania court give effect to the modification? This Court has not addressed this specific issue. *See Ross v. Ross,* 359 Pa.Super. 357, 366, 518 A.2d 1274, 1279 (1986).

The mother contends on appeal that our trial court lacked jurisdiction to modify arrears which had accumulated under the registered West Virginia order prior to the date the father filed his petition with the Pennsylvania court to modify the registered order. She argues that because, upon registration, the West Virginia support order must be treated as if it were issued by a Pennsylvania court, our Courts cannot give effect to a modification which would result in a retroactive reduction of arrearages which had accrued under the registered West Virginia order before the date on which the father filed his petition with the Pennsylvania trial court for modification. The mother further argues that in order to have the registered order modified in Pennsylvania, the father must petition the Pennsylvania courts for modification and submit to a hearing in Pennsylvania on the merits of the petition. She asserts that there is no support for the trial court's entry of a *nunc pro tunc* order which recognized the modification granted by the West Virginia court, and which altered the amount

of arrearages due in Pennsylvania pursuant thereto. We do not agree.[3]

There is strong support for the action taken by the trial court to give effect to the modification entered by the West Virginia Court. In *Everson v. Everson*, 494 Pa. 348, 431 A.2d 889 (1981), our Supreme Court suggested that where a Pennsylvania court recognizes a foreign money judgment, and thereafter, action taken by the foreign court which issued the judgment alters the amount owed the obligee, our trial court should amend the registered foreign judgment to comply with that action, and should enter a new order *nunc pro tunc*. *Id.*, 494 Pa. at 358–59, 431 A.2d at 894.

In *Everson*, a couple living in Arizona, a community property state, obtained a divorce and property distribution from that state's court. 494 Pa. at 354, 431 A.2d at 892. Both the husband and the wife appealed the distribution, and the appellate court remanded the case to the trial court to redetermine whether certain assets were community property or the spouses' separate property. *Id.*, 494 Pa. at 355, 431 A.2d at 893. On remand, the trial court found that the husband had commingled the property in question, and that it was unable to trace the separate funds or assets. *Id.*, 494 Pa. at 356, 431 A.2d at 893. The trial court entered an order giving the wife a lien against all the assets until the husband satisfied a $596,628.02 judgment in her favor. *Id.* The husband filed a second appeal and requested a stay of execution, but he failed to file an appeal bond. *Id.* The Arizona court denied the stay. *Id.*

While the husband's second appeal was pending, the wife transferred the Arizona judgment, pursuant to the Uniform Enforcement of Foreign Judgments Act, 42 Pa.C.S.A. § 4306, to Lehigh County, Pennsylvania, the situs of trust property in which the husband had an interest. 494 Pa. at 356, 431 A.2d at 891. The husband requested a stay of execution on the transferred judgment based on his second appeal from the underlying Arizona judgment. The Pennsylvania trial judge

3. We find that the trial court properly entered the *nunc pro tunc* order recognizing the modification granted by the West Virginia Court, which was based upon evidence heard by a West Virginia master at support hearings in that state. It necessarily follows that no Pennsylvania hearing was required.

denied the stay because the husband failed to post the bond required to stay the proceedings in Arizona. *Id.*, 494 Pa. at 353, 431 A.2d at 891. Thereafter, the Pennsylvania trial court entered a judgment on the pleadings against the trustee of the trust and in favor of the wife to the extent of the judgment. *Id.*, 494 Pa. at 353–54, 431 A.2d at 892. This Court affirmed on appeal. *Id.*, 494 Pa. at 354, 431 A.2d at 892. Our Supreme Court granted the husband's petition for allowance of appeal. *Id.* Thereafter, the Arizona appeals court reversed in part the Arizona trial court's original order and remanded the case. *Id.*, 494 Pa. at 356, 431 A.2d at 891. Our Supreme Court held that the Pennsylvania trial court should have stayed execution on the transferred judgment pending the Arizona trial court's compliance with the directive issued by its appeals court, and the Arizona court's entry of a new judgment, which could alter the amount the husband owed the wife. *Id.*, 494 Pa. at 359–60, 431 A.2d at 895. The *Everson* court stated that, while a stay of the enforcement proceedings was not technically required, "general principles of law relating to the enforcement of judgments suggest that the execution … be stayed on equitable grounds due to the proceedings in Arizona subsequent to appellee's [the wife's] transfer of the judgment to Pennsylvania." *Id.*, 494 Pa. at 359–60, 431 A.2d at 895.

In discussing general principles pertaining to the enforcement of judgments, the *Everson* court stated that

> … the mere fact that a party has made a motion in the trial court to … modify the judgment … does not deprive the judgment of its conclusive effect between the parties. Where an execution is issued under a judgment which is subsequently amended or modified, regularity may be imparted to the execution by an amendment of the judgment on which it is based and by its entry *nunc proc tunc.*

494 Pa. at 358–59, 431 A.2d at 894. These general principles, applicable to the enforcement of judgments, support giving effect to the West Virginia court's modification of its order by entry of an order *nunc pro tunc.*[4]

4. *See also* 69 Standard Pa.Practice § 15 (decision by rendering state's court after judgment transferred to Pennsylvania, resulting in money

Admittedly, the *Everson* court dealt with the propriety of a stay of enforcement of a foreign money judgment based on a foreign divorce and property distribution, while we are faced with an obligee-spouse's attempt to avoid modification of a registered foreign order for child support and alimony. However, there are similarities between that case and the instant case which support following the *Everson* court's suggested course of action.

First, the Pennsylvania trial court in both cases was authorized, by similarly worded statutes, to enforce the foreign decree. The *Everson* court acted pursuant to the UEFJA, which states that upon filing

> [t]he clerk shall treat the foreign judgment in the same manner as a judgment of any court of common pleas of this Commonwealth. A judgment so filed ... shall have the same effect and be subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of any court of common pleas of this Commonwealth and may be enforced or satisfied in like manner.

42 Pa.C.S.A. § 4306. Instantly, the RURESA authorized our trial court to enforce the West Virginia support order pursuant to a statutory mandate that our courts treat a registered foreign support order "in the same manner as a support order issued by a court of this Commonwealth, give it "... the same effect ... as a support order of this Commonwealth," and enforce it (the foreign support order) "... in like manner." 23 Pa.C.S.A. § 4540(a).

Second, the trial court was not required by statute to stay enforcement proceedings in either the *Everson* case or this case. In *Everson,* the UEFJA provided that the judgment debtor could preclude execution of the foreign judgment by

award substantially different from original award, warrants stay of execution in Pennsylvania until Pennsylvania court enters new judgment in compliance with rendering state court's mandate); Restatement of Judgments (Second) § 82, Comment a (even valid foreign judgment properly denied enforcement where equitable relief therefrom obtained in rendering court, on theory that foreign judgment ought have no greater effect in recognizing state than it would be given in rendering state).

showing that an appeal would be taken and that security for satisfaction of the judgment was furnished. 494 Pa. at 359, 431 A.2d at 895. Here, the RURESA mandates a stay of registration proceeding upon a showing that an appeal is pending or will be taken in the foreign state which issued the support order, and that the obligor-spouse has posted the requisite bond. 23 Pa.C.S.A. § 4540(c). In neither case was the trial court required to stay its enforcement of the foreign order because neither the husband-judgment debtor in *Everson*, nor the father-obligee in the instant case, had posted the requisite bond. *See* 494 Pa. at 356, 431 A.2d at 893.[5]

■ As correctly stated by the mother, this Court "has consistently held that RURESA does not intend an order of support to act as a *bar to an entry* of an order in another state having jurisdiction." (Mother's Brief at 11) (emphasis added). The father does not assert that the petition for modification pending before the West Virginia Master rendered the underlying support order incapable of registration in Pennsylvania pursuant to the RURESA.[6] In fact, the registered West

5. Also, the husband in the instant case was not appealing the original order (procedurally he could not have) but was seeking a modification based on changed circumstances, namely, his involuntary loss of employment and his former wife's remarriage.

6. Here, the father initially attempted to avoid the Pennsylvania registration of the West Virginia Order. He argued that the petition for modification of support pending in the West Virginia court (for almost a year at the time the mother first petitioned for registration of the original West Virginia order), if granted, might substantially reduce amounts due and owing the mother pursuant to the original West Virginia order. However, the trial court refused to stay registration of the original West Virginia order.

There is no allegation that the trial court in the instant case should have stayed registration of the West Virginia Order. We note that this decision is in accord with 23 Pa.C.S.A. § 4540(c) which mandates a stay in proceedings to enforce a foreign support order only when the party challenging the registration shows that an appeal has been or will be taken and that security for payment of the order, as required by the state rendering the support order, has been furnished. Here, the father had filed a petition for modification of child support based on his loss of a $32,000-a-year job. No decision regarding the modification had been made by the West Virginia court at the time the mother petitioned to have the original West Virginia support order registered in Pennsylvania. Thus, procedurally, the father could not have filed an appeal; no stay of registration was required under 23 Pa.C.S.A. § 4540(c).

Virginia order continued in effect in Pennsylvania, with arrearages accumulating pursuant thereto, while the father proceeded through the West Virginia court system. However, as suggested by the *Everson* court, once the West Virginia courts concluded that changes in the father's economic situation and in the mother's marital status warranted a modification of their own order, our courts properly recognized the West Virginia court's authority to do so. *See also* 23 Pa.C.S.A. § 4352(f).

Third, in both cases, our courts were asked to give effect to an action taken by a foreign court that affected a properly registered foreign order. In *Everson,* the husband claimed that a Pennsylvania court ought not enforce a judgment based on an Arizona court order making a property distribution following an Arizona divorce, where an appeal was pending at the time of the transfer to Pennsylvania, and, subsequent thereto, the Arizona appellate court reversed their trial court's determination that certain property was community property. 494 Pa. at 357, 431 A.2d at 893.[7] This claim is analogous to the argument forwarded by the husband in the instant case (and adopted by the trial court) that the order for support entered against him in Pennsylvania, which was based on a West Virginia support order, ought to reflect a modification made by the West Virginia court where the modification procedure was pending at the time the Pennsylvania court registered the original West Virginia support order.

█ The mother's argument that recognition of the West Virginia Court's modification of the support order, and reduction of arrears due pursuant thereto retroactive to 1988, would contravene our statutory ban against retroactive modification of arrears prior to the date a petition for modification is filed fails. First, the cases cited by the mother in support of this

7. We recognize that the husband in *Everson* sought a stay of the enforcement proceedings due to his pending appeal. In the instant case, although the father initially attempted to avoid the Pennsylvania registration of the West Virginia support and alimony order, the relief sought below was a modification of the registered order.

argument are distinguishable.[8]   Second, the trial court's action

8.  The appellant cites our decision in *Mosier v. McCaughtry*, 387 Pa.Super. 405, 564 A.2d 241 (1989), for the proposition that the lower court here lacked jurisdiction to modify arrears which accumulated pursuant to the registered West Virginia order prior to the father's Pennsylvania petition for modification.   The *Mosier* court admittedly read 23 Pa. C.S.A. § 4352(a) and (d) together to mean that a court *making* a support order retains jurisdiction to modify it, except with respect to arrearages which accumulated prior to the filing of *a* petition to modify. 387 Pa.Super. at 409, 564 A.2d at 243 (emphasis added).

In *Mosier* the mother obtained a court order allowing her to accumulate arrearages while she attended graduate school.   Upon completion of her education, she became employed, but she failed to pay the arrearages.   She filed a petition to modify arrearages *already owed*, asking that anticipated psychiatric bills and parochial school tuition for the parties' only child offset her obligation to pay the father.   *Id.*, 387 Pa.Superior Ct. at 407–408, 564 A.2d at 242.   The trial court agreed. On appeal we found that 23 Pa.C.S.A. § 4352(a) and (d) prohibited the trial court from reducing the mother's arrears that existed at the time she filed her petition to modify.   *Id.*, 387 Pa.Superior Ct. at 408–409, 564 A.2d at 243.

The facts of the *Mosier* case differ from those in the instant case in two respects.   First, the support order involved there was one made by a Pennsylvania trial court, and not a registered foreign support order. Thus, the concern for giving effect to a modification by a foreign court with jurisdiction to do so was not present there.   Second, in *Mosier*, the mother-obligor sought a modification of arrears which accumulated before the date of her petition to modify, 387 Pa.Superior Ct. at 409, 564 A.2d at 243.   In contrast, the father in the instant case sought a modification of the support order by the West Virginia court that would become effective on the date his West Virginia petition to modify was filed (or conversely, which would affect only those arrearages which would accumulate *following* his West Virginia petition).

The mother also draws our attention to the New Jersey case of *Donelan v. Doherty*, 227 N.J.Super. 535, 548 A.2d 199 (1988), in support of her argument that modification of the registered West Virginia order can be made only after a hearing on the merits in Pennsylvania, and must be based entirely on facts or circumstances arising after the registration.   Initially, we note that this Court is not bound by the decisional law of the state of New Jersey.   More importantly, the *Donelan* case differs from the instant case.   The obligor-father in *Donelan* chose not to file an appeal in Maryland, the state where the support order was made.   Instead, he chose to seek modification of the Maryland order in New Jersey, where it had been registered pursuant to the RURESA.   The husband argued that changes in his and his wife's respective incomes warranted a reduction in the registered Maryland support order.   In disallowing the modification, the New Jersey court held that the father was not entitled to *retroactive or prospective* modification of an order originating in Maryland (but registered in New Jersey) based on facts occurring *before registration* in *New Jersey* because such facts could not constitute "changed circumstances" under New Jersey law.   548 A.2d at 200 (emphasis added).

does not violate our statutory prohibition against retroactive modification of arrearages prior to the date a petition for modification is filed. As stated above, the West Virginia court's action affected only arrearages accumulating under the West Virginia order *after* the date on which the father filed his West Virginia petition to modify his support obligation. This result was entirely in accord with Pennsylvania law governing wholly domestic support cases, which allows retroactive reduction of support arrears accruing after a petition to modify the support obligation has been filed. *See* 23 Pa.C.S.A. § 4352(e).[9]

## CONCLUSION

We find that the trial court did not err in entering a *nunc pro tunc* order which recognized the West Virginia court's

The *Donelan* court called the father's petition for modification "a veiled attempt ... to pursue an appeal from the Maryland support order in New Jersey." *Id.* It noted that a New Jersey court lacks jurisdiction over such an appeal.

In contrast, the father in the instant case did not attempt to seek modification in Pennsylvania *in lieu* of an appeal from the original West Virginia support order. First, the father filed a petition to modify the support order one year after it was entered, based on his involuntary loss of employment following the making of the support order. An appeal would not have been proper procedure. Second, the father's modification petition had been *pending* in West Virginia for nearly one year when the mother had the West Virginia support order registered in Pennsylvania. It is the modification by the issuing court, based on facts occurring in the issuing jurisdiction, and applied to arrears which accrued *following* the West Virginia petition to modify, that the father here seeks to have recognized by our courts.

9. Appellant cites cases where, because the underlying action taken by the foreign court contravenes our public policy, our courts have refused to recognize even final foreign decrees regarding child support. *See Powell v. Conway*, 386 Pa.Super. 1, 562 A.2d 324 (1989) (Florida order barring college-age child's action for support not bar Pennsylvania claim for support for college expenses); *Oman, supra* (Pennsylvania court not bound by Virginia order terminating duty to pay support at child's eighteenth birthday); *Myers v. Young*, 285 Pa.Super. 254, 427 A.2d 209 (1981) (Virginia order suspending support duty until parents arrange visitation satisfactory to obligor not bar entry of Virginia support order in Pennsylvania pursuant to RURESA). These cases are distinguishable from the instant case and do not undermine the propriety of the trial court's actions.

modification of the original support order and which modified the registered West Virginia order in compliance therewith.

Order Affirmed.

TAMILIA, J., filed a concurring opinion.

TAMILIA, Judge, concurring:

I concur in the result as I believe the Order registered in Pennsylvania was dependent upon and must be governed by the final action of the West Virginia Court. The final determination included the Order on appeal and resolution of the support issues and date fixed for modification. The Pennsylvania registered Order is controlled by this action as no independent proceeding occurred in Pennsylvania which would have established an independent result. I differ with the majority which attempts to analogize this proceeding, based upon support law and registration under the Revised Uniform Reciprocal Enforcement of Support Act (RURESA), 23 Pa. C.S. § 4501 *et seq.*, which is reciprocal legislation and statutory in nature and not dependent upon the full faith and credit provisions of the Constitution, with *Everson v. Everson,* 494 Pa. 348, 431 A.2d 889 (1981), which deals with property and registration of a foreign judgment which is governed by the full faith and credit clause. Reciprocal legislation in support was adopted because of the grey area in support and alimony cases which rendered them unenforceable under the full faith and credit provisions of the Constitution since they were not final judgments and were in personam in nature. In recent years, because of increasing involvement by the Congress in attempting to firm up support obligations, a degree of finality has been introduced in support matters, particularly with regard to vacating arrears. Registered Orders are modifiable and do not take on the true character of final judgments contemplated by the full faith and credit clause. The Arizona judgment in *Everson,* since it was an in rem judgment dealing with an award of community property, did not constitute a final judgment entitled to full faith and credit because the Arizona courts retained jurisdiction pending appeal. Registration of the trial court Order in Pennsylvania was a nullity since the Order was not final and Pennsylvania lacked authori-

ty to enforce it because it lacked jurisdiction. In this case, Pennsylvania did have jurisdiction by virtue of registration to enforce the Order, but it remains subject to modification by the West Virginia Court. Support and alimony Orders are unique in this respect since courts in the domicile of the obligor as well as the domicile of the obligee can effect the amount and duration of the Order. This is not possible under the full faith and credit clause with Orders registered as foreign judgments.

The majority is bringing into this area of law a confusing analysis which is not in accordance with the manner in which RURESA operates, and is confusing its operation with that of registering final judgments, pursuant to the Uniform Enforcement of Foreign Judgments Act, 42 Pa.C.S. § 4306. The provisions of RURESA, section 4540, Effect and enforcement of registered order, (c) Procedure, provides the remedy for cases in which an appeal from the Order of the original state is pending. Here, the problem arose because appellee father failed to take advantage of section 4540(c) to request a stay of the Order due to the pending appeal in West Virginia, and the lack of diligence of the West Virginia Courts in resolving the issue. In cases which are registered, the registering state will proceed with caution whenever there is question as to the finality of the rendering state's Order. The proceedings in this case simply ignored the clear mandate of the law.