J-A22004-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOHN CIFERNI, | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | | |
| v. | | |
| CAROLYN CIFERNI, | | |
| Appellee | | No. 574 EDA 2018 |

Appeal from the Order Entered January 12, 2018
In the Court of Common Pleas of Delaware County
Domestic Relations at No(s): 2007-01131
PACSES No. 711109200

BEFORE:  BENDER, P.J.E., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:            **FILED DECEMBER 12, 2018**

John Ciferni (Father) appeals from the January 12, 2018 order that reduced the child support arrearages to zero dollars owed by Carolyn Ciferni (Mother) to Father for the period between May 20, 2007 to May 21, 2009, when Mother was incarcerated.[1]  Following our review, we affirm.

Father raises the following issues for our review:

1. Was it error on the part of the [t]rial [c]ourt to fail to take into consideration that [Mother], at the time of the [h]earing, had income and assets awarded in the parties' [d]ivorce/[e]quitable [d]istribution [h]earing which were more than sufficient to pay a child support obligation while [Mother] was incarcerated[?]

---

[*] Former Justice specially assigned to the Superior Court.

[1] Mother has not filed a responsive brief.

2. Was it an abuse of discretion on the part of the [t]rial [c]ourt in determining that marital assets, that were in the custody of the [d]ivorce [c]ourt while [Mother] was incarcerated, were not foreseeable assets in spite of the fact that the parties in [c]ourt had held the issue of incarceration arrears in abeyance until the divorce action was concluded[?]

Father's brief at 5.

Initially, we note that our standard of review over the modification of a child support award is well settled. A trial court's decision regarding the modification of a child support award will not be overturned absent an abuse of discretion, namely, an unreasonable exercise of judgment or a misapplication of the law. **See Schoenfeld v. Marsh**, 418 Pa. Super. 469, 614 A.2d 733, 736 (Pa. Super. 1992). An award of support, once in effect, may be modified *via* petition at any time, provided that the petitioning party demonstrates a material and substantial change in their circumstances warranting a modification. **See** 23 Pa.C.S.[] § 4352(a); **see also** Pa.R.C.P. 1910.19. The burden of demonstrating a "material and substantial change" rests with the moving party, and the determination of whether such change has occurred in the circumstances of the moving party rests within the trial court's discretion. **See Bowser v. Blom**, 569 Pa. 609, 807 A.2d 830 (2002).

**Plunkard v. McConnell**, 962 A.2d 1227, 1229 (Pa. Super. 2008).

We have reviewed the certified record, Father's brief, the applicable law, and the thorough opinion authored by the Honorable Dominic F. Pileggi of the Court of Common Pleas of Delaware County, dated April 25, 2018. We conclude that Judge Pileggi's extensive, well-reasoned opinion correctly disposes of the issues that have been raised by Father. Accordingly, we adopt Judge Pileggi's opinion as our own and affirm the order on appeal on that basis.[2]

_____

[2] We direct the parties to attach a copy of the trial court's opinion in the event of further proceedings.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/12/18</u>

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW

JOHN CIFERNI
Plaintiff/Appellant

C.C.P. NO: 2007- 01131
PACSES NO. 711109200

vs.

Superior Court No.: 574 EDA 2018

CAROLYN CIFERNI
Defendant/Appellee

IN SUPPORT

Richard A. James, Esquire, Attorney for Plaintiff/Appellant
320 West Front Street, Media, PA 19063
R. Scott Aldridge, Esquire, Attorney for Defendant/Appellee
115 West State Street, Suite 200, Media, PA 19063

OPINION

PILEGGI, J.                                      DATE: April 25, 2018

This Appeal is considered a direct appeal from this Court's January 12, 2018

Support Order. Appellant is Plaintiff, John Ciferni ("Father"). Appellee is

Defendant, Carolyn Ciferni ("Mother"). Father seeks review of this Court's January

12, 2018 Support Order, which remitted and reduced to Zero Dollars ($0.00), child

support arrears owed from Mother to Father, accumulated during the time period

from May 20, 2007 to May 21, 2009, during which Mother was incarcerated. On

appeal, Father raises seven (7) allegations of error, which this Court has

consolidated to the following two (2) issues:

1. Did this Court err in concluding that Mother was unable to pay child support
during the time period of May 20, 2007 until May 21, 2009, the time
period during which she was incarcerated, due to her lack of verifiable
income or assets, pursuant to applicable law and rules of civil procedure, by
not considering Mother's earning capacity and income immediately prior to
her incarceration and after her release, and in light of the fact that, in



2017, she received an award of assets as a result of the parties' equitable distribution of marital property?

2. Did this Court err in failing to enter an Order within the timeframe required by *Pa. R.C.P. No. 1910.11(i)* and in the form prescribed in *Pa. R.C.P. No. 1910.27(e)*?

## FACTUAL AND PROCEDURAL HISTORY

An Order was entered on February 3, 2010 by the Honorable Linda A. Cartisano, which "held in abeyance...until relisted by either party" the issue of child support owed by Mother during her incarceration. On September 12, 2017, Father filed a Petition which requested that this issue be relisted for determination. On January 12, 2018, this Court entered an Order which remitted and reduced to Zero Dollars ($0.00) the support arrears accumulated during the time period in which Mother was incarcerated. Father appealed.

Appellant is John Ciferni, ("Father") and Appellee is Carolyn Ciferni, ("Mother"). The parties are the parents of two children ("the Children"). On May 17, 2007, Father filed a <u>Complaint for Child Support</u> against Mother. At the time Father filed his <u>Complaint for Child Support</u>, there was a divorce action pending between these parties, which contained a claim for equitable distribution of marital property.[1]

---

[1] Pursuant to *Pa. R.E. 201(b)-(d)* this Court took judicial notice of the divorce action, docketed in the Delaware County Court of Common Pleas at Case No. 2005-014807 under the case caption <u>John Ciferni v. Carolyn S. Brumbaugh Ciferni</u>. Specifically, this Court notes that Plaintiff John Ciferni is also the Plaintiff in the divorce matter, and that he filed a <u>Complaint in Divorce</u> on December 29, 2005, two (2) years prior to the commencement of this

On May 20, 2007 Mother was imprisoned[2] in the George W. Hill Correctional facility.[3] On August 28, 2007 Joseph J. Agozzino, Esquire, Master in Support, entered an <u>Order</u> which provided for Mother to pay $1,150 per month in child support to Father. On October 23, 2007, by agreement of the parties, an <u>Order</u> was entered by the Honorable Edward J. Zetusky, Jr., which provided the following:

> And Now, to wit, this October 23, 2007 it is hereby Ordered that the Obligor's financial obligation is set to a numerical value of zero due to lack of income and assets.
>
> Further determination will be made by the Domestic Relations Section regarding the obligor's financial liability upon obligor acquiring an ability to pay.

*See Ex. P-2 and Ex. P-3.*

On May 21, 2009, Mother was released from prison. On May 29, 2009, approximately one (1) week after Mother was released from prison, an <u>Order</u> was entered by Support Master Joseph J. Agozzino, Esquire. The Master's <u>Order</u>, *inter alia*, provided for Mother to pay child support the amount of $1,000.00 per month plus $100.00 toward arrears, and was applied retroactively to May 30, 2007

---

support matter, and that the divorce action between these parties did contain a claim for equitable distribution of marital property.

[2] According to Mother's counsel, Mother was "imprisoned for two (2) years for a DUI problem." *N.T. 12/4/17* at 5 ¶ 7-15. Pursuant to *Pa. R.E. 201 (b)-(d)*, this Court took judicial notice of Mother's criminal history. Specifically, this Court noted that Mother was arrested on August 3, 2006 for several offenses, including "DUI: Highest Rte of Alc (BAC .16+) – 3rd Off." Mother was incarcerated on May 20, 2007 in George W. Hill Correctional Facility, and on September 21, 2007, she was sentenced, *inter alia*, to confinement for a period of 1-2 years, a fine of $2,500, and 3 years of probation.

[3] Pursuant to *Pa. R.E. 201(b)-(d)*, this Court took judicial notice of the following: Mother was incarcerated in George W. Hill Correctional facility, from May 20, 2007 until December 19, 2007. She was then incarcerated in SCI Muncy from December 19, 2007 until May 21, 2009.

(which was ten (10) days after the commencement of Mother's incarceration). *See Ex. P-3*, pp. 18-19. The Master did not find that Mother had actual income, but instead imputed "$2,300.00 - $2,700.00" based upon "past earnings, current situation." *See Id.* On October 21, 2009 the Master filed "a supplemental document" in which the Master stated the basis for his decision. *See Ex. P-3*, pp. 18-19. Notice of the Master's May 29, 2009 Order, along with the "supplemental document" was sent to the parties on October 26, 2009 pursuant to *Pa. R.C.P. No. 236*. On November 9, 2009, Mother filed an <u>Appeal from Master's Order and Request for Hearing De Novo</u>.[4]

On November 12, 2009, Father filed a <u>Petition for Contempt</u>. On December 7, 2009, The Honorable Mary Alice Brennan entered an <u>Order</u> finding Mother in contempt of the Master's May 29, 2009 <u>Order</u> and sentencing Mother to thirty (30) days incarceration with a release amount of $1,200.00 and probation for a period of one (1) year. *See Ex. P-3*, p. 16. On January 5, 2010, Judge Brennan entered an <u>Order</u> vacating her December 7, 2009 <u>Order</u> which found Mother in contempt, and providing for Mother to pay monthly child support to Father in the amount of $225.00 plus $25.00 towards arrears for a total monthly support obligation of $250.00 which was retroactive to January 1, 2010. *See Ex. P-3*, p.15.

---

[4] This filing is erroneously docketed as a Petition for Modification filed on November 5, 2009. *See Ex. P-3*. However, this Court attaches a copy of the document filed, which is an <u>Appeal from Master's Order and Request for Hearing De Novo</u>, filed by Mother on November 9, 2009.

After a hearing held on January 27, 2010, the Honorable Linda A. Cartisano

entered an Order on February 3, 2010. Judge Cartisano's Order applied

retroactively to June 1, 2009, and found that Father had a net monthly income of

$6,324.45 and that Mother had an imputed net monthly income of $1,380.00.

Consistent with its finding relating to the parties' incomes, the February 3, 2010

Order provided for Mother to pay $492.47 in child support each month to Father.

Because Mother's obligation was based on imputed net monthly income, to avoid

contempt charges, Mother was to pay $275.00 per month. Paragraph 7a. and 7b.

of the February 3, 2010 Order provided as follows:

> 7. The Court holds in abeyance, until relisted by either party, the
>    following issues:
>    a. Credit owed to Defendant Carolyn Ciferni in Civil Case
>       No. 06-6108120.[5]
>    b. Support owed by Defendant Carolyn Ciferni for the period
>       of May 30, 2007 to May 31, 2009.[6]

*See 2/3/2010 Order of Support,* at ¶ 7; *Ex. P-3*

On February 17, 2017 approximately **eight (8) years** after Mother's release

from prison, an Equitable Distribution Order was entered, which awarded Mother a

distribution of marital assets, the total of which is in excess of $100,000.00. On

---

[5] Pursuant to *Pa. R.E. 201(b)-(d)*, this Court took judicial notice of this matter captioned Carolyn S. Ciferni v. John Ciferni, Pacses Case No. 066108120, and notes that this is a matter initiated by Mother, against Father, on March 17, 2006 and that this matter has been dormant since September 17, 2007.

[6] The parties, through counsel, informed this court that Judge Cartisano's order of February 3, 2010, paragraph 7b. addressed the time period during which Mother was incarcerated. *N.T. 12/4/17* at 8-9. Pursuant to *Pa. R.E. 201(b)-(d)*, this Court took judicial notice of the following: Mother was incarcerated in George W. Hill Correctional facility, from May 20, 2007 until December 19, 2007. She was then incarcerated in SCI Muncy from December 19, 2007 until May 21, 2009.

September 12, 2017, Father filed a <u>Petition for Modification/Review of Existing Support Order</u>, which requested that this Court hold a hearing on issues relating to paragraph 7a. and 7b. of Judge Cartisano's February 3, 2010 <u>Order</u>.

On December 4, 2017, this Court held a de novo hearing, with respect to Father's Petition, at which both parties were present with counsel. At the December 4, 2017 hearing, Mother's position, as stated through counsel, was that during the time in which Mother was incarcerated, she did not have any income or assets which presented the reasonable prospect that she would have been able to pay the support order in the foreseeable future. The only asset Mother possessed was a jeep worth $4,500.00. *N.T. 12/4/17* at 22-28.

Father's position, as stated by counsel[7], was while he recognizes that Mother did not have any assets or income during the time period in which she was incarcerated, she had a **claim** for assets by virtue of the equitable distribution case that was then pending between Father and Mother in their action for dissolution of marriage.[8] Ex. P-2. *N.T. 12/4/17* at 28-29. Mother's claim for assets was resolved

---

[7] Although both parties were present, they did not actually testify. Counsel for each party presented facts, evidence and argument for this Court to consider in its decision, which this Court found to be permissible under *Leasure v. Leasure*, 549 A.2d 225 (Pa. Super. 1988).

[8] Pursuant to *Pa. R.E. 201(b)-(d)* this Court took judicial notice of the divorce action, docketed in the Delaware County Court of Common Pleas at Case No. 2005-014807 under the case caption <u>John Ciferni v. Carolyn S. Brumbaugh Ciferni</u>. Specifically, this Court noted that on February 17, 2017 the Honorable William C. Mackrides entered an Order in Equitable Distribution which provided for a distribution of marital property. A divorce decree was granted by the Honorable Linda A. Cartisano on September 21, 2017. Therefore, considering the appeal period of an award in equitable distribution, the duration of which would be 30 days after the entry of a divorce decree, this court noted that the matter did in fact conclude on October 31, 2017. *See Pa. R.A.P. 901, Pa. R.A.P. 902*, and *PA. R.A.P. 341*. Therefore, this Court determined that the divorce matter did conclude, thereby providing Mother with legally unabated entitlement to assets awarded to her in equitable distribution approximately 8 years and 5

by way of an equitable distribution order entered by the Honorable William C. Mackrides on February 17, 2017 and Mother was awarded significant marital assets. Therefore, Mother should be liable for support arrears owed during the time period in which she was incarcerated. *See Id.* at 17-22.

To fully understand Father's argument, this Court asked Father's counsel the following:

> THE COURT: So you're making the argument that someone that's incarcerated, but has some assets, even if they're not liquid at the time, or has the possibility of having assets in the foreseeable future, maybe an inheritance, maybe something else. Maybe they're young and they'll be out in a profession that is lucrative. That in those situations the support order should continue to be charged and let the arrears add up and they'd be paid off when the person comes into the assets or is able to pay them in the foreseeable future. Is that basically your argument?
>
> FATHER'S COUNSEL: That is correct because that's what the rule says.
>
> *N.T. 12/4/17 at 42-43*

On January 12, 2018, this Court entered an <u>Order</u> which provided as follows:

> 1. [Mother's] child support obligation for the time period from May 20, 2007 until May 21, 2009, during which [Mother] was incarcerated, shall be set to Zero Dollars ($0.00) per month.

---

months after her release from incarceration. However, no testimony was presented which indicated whether Mother has in fact received the assets awarded to her by the February 17, 2017 Order.

2. Any arrears or balance due from [Mother] to [Father], for child support accumulated during the time period from May 20, 2007 until May 21, 2009, during which [Mother] was incarcerated, as now shown on the accounts of Delaware County Office of Domestic Relations, are hereby remitted and reduced to zero.

*See 1/12/2018 Order,* at ¶¶1-2.

On February 20, 2018 Father filed a Notice of Appeal. On February 26, 2018 this Court ordered Father to provide a Statement of Errors Complained of on Appeal pursuant to *Pa. R.A.P. 1925(b).* On March 14, 2018, Father filed a Statement of Matters Complained of on Appeal Pursuant to Pennsylvania Rule of Appellate Procedure Section 1925.

## DISCUSSION

Father raises the following issues on appeal:

1. Did this Court err in concluding that Mother was unable to pay child support during the time period of May 20, 2007 until May 21, 2009, the time period during which she was incarcerated, due to her lack of verifiable income or assets, pursuant to applicable law and rules of civil procedure, by not considering Mother's earning capacity and income immediately prior to her incarceration and after her release, and in light of the fact that, in 2017, she was awarded assets as a result of litigation concerning the parties' equitable distribution of marital property?

The evolution of current case law with respect to a parent's incarceration and the effect on child support obligation originated with the case of *Yerkes v. Yerkes,* 824 A.2d 1169 (Pa. 2003). In *Yerkes,* the Pennsylvania Supreme Court held that "a parent's incarceration is not, by itself, a material and substantial change in

circumstances providing sufficient ground for modification or termination of a child support order." *Id.* at 1177. The court analogized incarceration to voluntary unemployment, since criminal activity can foreseeably lead to incarceration. Because the defendant had relied on his incarceration as the sole changed circumstance for modifying his support order, the Supreme Court held that the trial court properly dismissed his modification petition, stating specifically that "we simply cannot justify relieving incarcerated parents of their child support obligations when they are not relieved of their other financial obligations." *See Yerkes*, 824 A.2d at 1175-77.

However, on May 19, 2006, *Pa. R.C.P. No. 1910.19* was amended to include the following subdivision:

> (f) Upon notice to the obligee, with a copy to the obligor, explaining the basis for the proposed modification or termination, the court may modify or terminate a charging order for support and remit any arrears, all without prejudice, when it appears to the court that:
> (1) The order is no longer able to be enforced under state law; or
> (2) The obligor is unable to pay, **has no known income or assets and there is no reasonable prospect that the obligor will be able to pay in the foreseeable future.** The notice shall advise the obligee to contact the domestic relations section within 60 days of the date of the mailing of the notice if the obligee wishes to contest the proposed action. If the obligee objects, the domestic relations section shall schedule a conference to provide the obligee the opportunity to contest the proposed modification or termination. If the obligee does not respond to the notice or object to the proposed action, the court shall have the authority to modify or terminate the order and remit any

arrears, without prejudice.

*Pa. R.C.P. No. 1910.19(f)*; *Plunkard v. McConnell*, 962 A.2d 1227, 1229 (Pa. Super. 2008). (Emphasis Added).

The explanatory comment accompanying *Pa. R.C.P. No. 1910.19(f)* states the following:

> New subdivision (f) addresses an increasing multiplicity of circumstances in which the continued existence of a court-ordered obligation of support is inconsistent with the rules or law. An obligor with no known assets whose sole source of income is Supplemental Security Income or cash assistance cannot be ordered to pay support under Rule 1910.16-2. Likewise, **an obligor with no verifiable income or assets whose institutionalization, incarceration, or long-term disability precludes the payment of support renders the support order unenforceable and uncollectible, diminishing the perception of the court as a source of redress and relief.** Often, the obligor unable or unaware of the need to file for a modification or termination, or the parties abandon the action. In those circumstances, the courts are charged with managing dockets with no viable outcomes. Both the rules and the federal guidelines for child support under Title IV-D of the Social Security Act provide for circumstances under which a child support case may be closed.
>
> *Pa. R.C.P. No. 1910.19(f), Explanatory Comment (2006)* (Emphasis added).

Following the enactment of *Pa. R.C.P. No. 1910.19(f)*, the Superior Court held that incarceration, which renders an inmate unable to pay child support due to a lack of verifiable income or assets, is a valid basis for modifying or terminating a child support obligation, and that *Pa. R.C.P. No. 1910.19(f)* allowed an

incarcerated payor to petition for modification of support despite the *Yerkes* decision. *Nash v. Herbster*, 932 A.2d 183 (Pa. Super. 2007).

Additionally, on May 13, 2008, *23 Pa. C.S. § 4352* was amended by adding subsection *a.2*, which provides that "incarceration, except incarceration for non-payment of support, shall constitute a material and substantial change in circumstance that may warrant modification or termination of an order of support where the obligor lacks verifiable income or assets sufficient to enforce and collect amounts due." *23 Pa. C.S. § 4352(a.2)*; *Plunkard v. McConnell*, 962 A.2d 1227 (Pa. Super. 2008). The statute was amended on May 13, 2008, effective retroactively to March 31, 2008, legislatively overruling *Yerkes. See 17 West's Pa. Prac., Family Law § 5:20 (7th ed.); See also 2008 Pa. Legis. Serv. Act 2008-16 (S.B. 1278).* Absent from the statute, adopted in 2008, is the requirement provided in *Pa. R.C.P. No. 1910.19(f)*, adopted in 2006, which requires a court to examine whether "there is no reasonable prospect that the obligor will be able to pay in the foreseeable future." *See Pa. R.C.P. No. 1910.19(f)(2).*

In the instant matter, Father alleges that this Court erred by "failing to consider Mother's income and earning capacity at the time she began her incarceration and after her release." *See Statement of Matters Complained of on Appeal,* at ¶ 1. This Court notes that Father did not assert this argument at the December 4, 2017 hearing and did not raise this issue prior to filing the instant appeal. Initially, this Court submits that this issue was not raised at the hearing on December 4, 2017

and is therefore waived. *See Pa. R.A.P. 302(a)* ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal). However, even assuming *arguendo* that the issue had been properly raised before this Court, the contention that this Court should have considered Mother's earning capacity and income prior to Mother's incarceration, and her earning capacity after incarceration, is without merit.

First, with respect to **pre-incarceration** earning capacity or actual earnings, neither *23 Pa. C.S. 4352(a.2)*, *Pa. R.C.P. No. 1910.19(f)*, nor the relevant case law require such consideration. The relevant consideration is based **not on pre-incarceration circumstances, but on circumstances during incarceration.** *See Nash v. Herbster*, 932 A.2d 183 (Pa. Super. 2007)(holding that an obligor's incarceration was a change in circumstance permitting modification or termination of support order). *See also 23 Pa. C.S. 4352(a.2)*(providing that incarceration, except for non-payment of support shall be considered a change in circumstance that may warrant modification or termination of arrears). (Emphasis added). *See also Plunkard v. McConnell*, 962 A.2d 1227 (Pa. Super. 2008)(holding that where **incarcerated obligor is without resources, has no present ability to pay his support obligation, and will be unable to do so for the foreseeable future,** obligor's support obligation may be terminated for the duration of his imprisonment). (Emphasis added). Furthermore, the *Plunkard* Court held that the obligor was only entitled to termination of support while incarcerated and was not entitled to have pre-

incarceration arrears terminated due to incarceration. The *Plunkard* Court did not allow for incarceration to be considered as a reason to terminate pre-incarceration arrears. *Id.* at 1231. In this Court's view, just as incarceration is not a permitted reason to terminate pre-incarceration arrears, pre-incarceration income or earning capacity should not be considered when making a determination as to whether to terminate a support obligation during incarceration. *See Id.* at 1231-32.

What should be considered is whether, **during incarceration,** an obligor lacks verifiable income or assets and there is no reasonable prospect that the obligor will be able to pay the amount of support owed in the foreseeable future. This Court found that, **at the time Mother was incarcerated,** she lacked verifiable income or assets sufficient to pay the amount of support due and that she did not have a reasonable prospect of paying the support owed in the foreseeable future. *See 23 Pa. C.S. 4352(a.2), Pa. R.C.P. No. 1910.19(f).* This Court's findings were supported by the following which was uncontested:

1) The only asset Mother had while she was incarcerated and immediately thereafter was a $4,500.00 jeep. *N.T. 12/4/17* at 25;

2) The Order entered on October 23, 2007, by the Honorable Edward J. Zetusky, **was entered by agreement of the parties,** upon their joint recognition that Mother did not have any income or assets and was unable to pay child support during her incarceration. *Id.* at 8-9; *Ex. P-3,* p. 23.

With respect to Father's allegation that this Court erred in failing to consider post-incarceration income and earning capacity, this Court notes that the Court's February 3, 2010 Order already makes such findings. A simple review of the child support docket, entered into evidence as Exhibit P-3, shows that the February 3, 2010 Order addressed Mother's income and earning capacity immediately after her release from incarceration. Specifically, in the February 3, 2010 Order, the Court found that Father had a net monthly income of $6,324.45 and that Mother had an imputed net monthly income of $1,380.00. This Order and its findings were applied retroactively to June 1, 2009, approximately ten days after Mother was released from incarceration. This Order makes findings concerning precisely this issue raised in Father's allegation of error. As such, this Court cannot supplant factual findings made by another trial judge as reflected in a previous final order entered almost eight (8) years prior to the December 4, 2017 hearing date. *See Pa. R.A.P. 341.*

The main question presented in this matter is whether a pending divorce case, in which the obligor Mother has a potential expectancy of an award of assets in equitable distribution, constituted verifiable income or assets or a reasonable prospect that the obligor Mother will be able to pay the amount of support owed during the period of her incarceration in the foreseeable future. *See 23 Pa. C.S. § 4352(a.2). See also Pa. R.C.P. No. 1910.19(f); See also Plunkard,* 962 A.2d at 1229. Father alleges that this Court erred in that it "failed to take into

consideration that [Mother] has income at present and assets awarded in equitable distribution which are sufficient to pay a support obligation while [Mother] was incarcerated. *See Statement of Matters Complained of on Appeal*, at ¶ 4.

This Court found that Mother's **claim** to property in equitable distribution, while she was incarcerated, did not constitute verifiable income and assets under *23 Pa. C.S. § 4352(a.2)*[9]. This Court found further that, at the time Mother was incarcerated, she did not have a reasonable prospect of having the ability to pay in the foreseeable future. *See Pa. R.C.P. No. 1910.19(f)*. In this Court's view, the analysis of "a reasonable prospect that [Mother] will be able to pay the amount of support owed in the foreseeable future" is a prospective analysis, which should be looked at from the time she was incarcerated, not a retrospective analysis viewed eight (8) years after she has been released.

In this Court's view a potential equitable distribution claim held by Mother is not "verifiable income or assets" and does not constitute a "reasonable prospect that [Mother] will be able to pay the support owed in the foreseeable future." *See 23 Pa. C.S. 4352(a.2); See also Pa. R.C.P. No. 1910.19(f)(2)*. In its analysis this

---

[9] This Court notes the disparity between the standard prescribed pursuant to *Pa. R.C.P. No. 1910.19(f)(2)*, which was adopted in 2006, and that prescribed in *23 Pa. C.S. § 4352(a.2)*, which was passed in 2008. The 2006 rule provides for this Court to terminate arrears accumulated during Mother's incarceration if this Court finds that, during the time period in which she was incarcerated, Mother "had no known income or assets and there was no reasonable prospect that [Mother] would have been able to pay in the foreseeable future." *See Pa. R.C.P. No. 1910.19(f)*. The 2008 statute provides for this Court to terminate an order of support "where [Mother] lacks verifiable income or assets sufficient to enforce and collect amounts due." *23 Pa. C.S. § 4352(a.2)*. Absent from the requirement prescribed in the 2008 statute is the requirement prescribed in the 2006 rule which provides for the court examine whether there was a "reasonable prospect that [Mother] would have been able to pay in the foreseeable future." While this Court notes the disparity between the rule and the statute, this Court considered the requirements prescribed by both.

Court considered the Pennsylvania Superior Court's holding in *Dugery v. Dugery*, 419 A.2d 90 (Pa. Super. 1980). In *Dugery*, a child support obligor appealed the decision of the trial court which had denied his petition to remit arrears accumulated during the period of time in which he was incarcerated. The trial court had based its denial on the fact that the obligor owned a dwelling, which the trial court characterized as "an asset available for meeting [the obligor's] support obligations." *Id.* at 91. In its reversal of the trial court's order, the Superior Court held that the obligor was entitled to abatement of child support arrearages accrued during incarceration, even though he owned a dwelling, where he realized no income therefrom. *See Id.* at 91-92.

In *Dugery*, the obligor who had actual ownership of an asset was entitled to remittal of child support arrears. In the instant matter, at the time during which she was incarcerated, Mother only had a potential claim to assets in equitable distribution. This Court is cognizant of the fact that a claim to assets is not present ownership of those assets, and is therefore not a present financial condition. *See Commonwealth ex rel. Yeats v. Yeats*, 79 A.2d 793 (Pa. Super. 1951)(holding that the where the estate of a deceased father of a divorced wife has not been settled, but the divorced wife and the child at issue would receive substantial awards is immaterial in proceedings against the divorced husband for support of the child).

This Court also considered the precedents established which disfavor the consideration of marital assets received in equitable distribution to establish one's

income for the purposes of child support. With respect to marital property, the Superior Court has ruled that proceeds a spouse receives in equitable distribution cannot be considered income for purposes of calculating child support. *Miller v. Miller*, 783 A.2d 832 (Pa. Super. 2001)(Emphasis added). Citing *Rohrer v. Rohrer*, 715 A.2d 463 (Pa. Super. 1998), the *Miller* Court stated that "it is settled law that money included in an individual's income for the purpose of calculating support payments may not also be labeled a marital asset subject to equitable distribution." *Miller*, 783 A.2d at 836. The *Miller* Court further stated that the reverse was also true, that money received from the sale of an asset awarded in equitable distribution may not be included in an individual's income for purposes of calculating support payments. *See Miller*, 715 A.2d at 834 (Emphasis added).

2. **Did this Court err in failing to enter an Order within the timeframe required by *Pa. R.C.P. No. 1910.11(i)* and in the form prescribed in *Pa. R.C.P. No. 1910.27(e)*?**

In his <u>Statement of Matters Complained of on appeal</u>, Father alleges that this Court committed reversible error in failing to enter an order in accordance with *Pa. R.C.P. No. 1910.11(i)* and *Pa. R.C.P. No. 1910.27(e)*. *Pa. R.C.P. No. 1910.11(i)* provides the following:

> (i) If a demand is filed, there shall be a hearing de novo before the court. The domestic relations section shall schedule the hearing and give notice to the parties. The court shall hear the case and enter a final order substantially in the form set forth in Rule 1910.27(e) within

60 days from the date of the written demand for a hearing.

*See Pa. R.C.P. No. 1910.11(i)*

Under this Rule, a party in an action for support does not request a hearing before the court when the court issues an interim order establishing an amount of support in the absence of an agreement by the parties made at an office conference, but rather the party is empowered to "demand" a hearing before the court; such wording clearly recognizes that one is entitled to a hearing before the court if one so chooses. *See Goodrich Amram 2d § 1910.11(i)(1), citing Warner v. Pollock,* 644 A.2d 747 (Pa. Super. 1994). Thus, if a demand is filed, there must be a hearing de novo before the court. *Id.* This rule is directive, not elective, and a litigant is entitled to a day in court. *Id.* The language of the rule provides an absolute right to a de novo hearing once properly requested. *Id., see also Capuano v. Capuano,* 823 A.2d 995 (Pa. Super. 2003); *DeMasi v. DeMasi,* 530 A.2d 871 (Pa. Super. 1987); *Groner v. Groner,* 476 A.2d 957 (Pa. Super. 1984).

In the instant matter, Father alleges that this Court erred in failing to have a hearing de novo and enter an order within 60 days from the date Father filed his Notice of Demand for Hearing. The record indicates that Father filed a Notice of Demand for Hearing on November 8, 2017. This Court held a hearing on December 4, 2017 and after careful review of the record, evidence submitted, and applicable law this Court entered the order, from which Father takes the within

appeal, on January 12, 2018. Father alleges that this Court committed reversible error by entering the Order in question 64 days from the date he filed his <u>Notice of Demand for Hearing</u>. Father's claim is without merit.

*Pa. R.C.P. No. 126* provides the following:

> The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties.

*Pa. R.C.P. No. 126*

In applying the standard of liberal construction set forth in *Pa. R.C.P. No. 126* to overlook procedural errors, procedural rules are not ends in themselves but means whereby justice, as expressed in legal principles, is administered. They are not to be exalted to the status of substantive objectives. *Goodrich Amram 2d, § 126:1, citing Beaver v. Penntech Paper Co.,* 307 A.2d 281 (Pa. 1973); *Highland Tank & Mfg. Co. v. Duerr,* 166 A.2d 38 (Pa. 1960); *McKay v. Beatty,* 35 A.2d 264 (Pa. 1944). *Pa. R.C.P. No. 126* functions to grant a trial court latitude to overlook a procedural defect that does not prejudice the rights of either party. *Id.* (internal citations omitted). Father claims no prejudice by the court's delay of 4 days in a matter with a convoluted and extensive procedural history spanning over ten (10) years.

Addressing Father's argument relative to *Pa. R.C.P. No. 1910.27(e)*, this Court notes that this rule provides the form by which orders of child and spousal support are to be written. The Order at issue in the within appeal is not an order which sets forth an amount of child or spousal support, but an order which remits arrears accumulated by Wife during a period of time in which she was incarcerated, pursuant to applicable law and Rules of Civil Procedure. *See 23 Pa. C.S. 4352(a.2), Pa. R.C.P. No. 1910.19(f)(2), Nash v. Herbster*, 932 A.2d 183 (Pa. Super. 2007). This Court does not understand why Father alleges non-compliance with *Pa. R.C.P. No. 1910.27(e)* as a basis for his allegation of reversible error, especially since Father's petition does not contain an averment requesting and setting forth grounds for modification of a child support order. *See Ex. P-1*. Furthermore, at no point during the proceedings did either party testify with respect to current income, earning capacity, expenses, or other relevant information to enable this court to make a determination with respect to child support. The sole issue for this court's determination was whether Mother should be responsible for payment of arrears accumulated during the period of time in which she was incarcerated. N.T. 12/4/17 at 5-7. Therefore, there would be no reason for this Court to conform its order to the format prescribed under *Pa. R.C.P. No. 1910.27(e)* and Father's allegation of error in this regard is without merit.

## CONCLUSION

For the above stated reasons this Court's Support Order dated January 12, 2018 should be affirmed.

BY THE COURT:

Dominic F. Pileggi, J.

NOTICE PURSUANT TO RULE 2__
MAILED_____ 4/25/18
DOMESTIC RELATIONS